In re the Marriage of Nancy L. MARSHALL, petitioner, Respondent,

v.

Michael G. MARSHALL, Appellant.

No. C2–83–1567.

Court of Appeals of Minnesota.

June 26, 1984.

Alan C. Eidsness, Minneapolis, for respondent.

Jack S. Jaycox, Bloomington, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

SEDGWICK, Judge.

This is an appeal from a marriage dissolution judgment entered in Hennepin County District Court, Family Division. The issues before this court are whether the trial court abused its discretion in valuing and distributing the marital estate and in granting spousal maintenance and child support. We affirm in part and remand.

## FACTS

When Nancy and Michael Marshall's 20 year marriage was dissolved they were both 40 years old. They have three children. The youngest is 16 years old and lives with her mother.

Both parents are college educated. Nancy stayed home most of her married life to raise children. For the past six years she worked part-time for a travel agency. She also co-authored a book. The most she ever made in one year was $7,000. She is unemployed. During the pendency of this action she completed one semester of law school at William Mitchell.

Michael is an unemployed major league baseball player. He has an interest in several business ventures.

In April 1981 Nancy filed a petition for marriage dissolution. She withdrew the petition when the parties signed an agreement to live separately for the remainder of 1981. This agreement was executed to take advantage of tax savings the two could realize by filing separate tax returns. Nancy refiled the petition at the end of 1981.

During the action the parties were in court on five separate occasions arguing about money Michael did not pay Nancy for maintenance. To prevent additional appearances they signed another agreement in November 1982.

It provided in part:

all money that they received either directly or on their behalf during 1981 or 1982 is an *advance* against the final settlement, subject to either a negotiated agreement or the Court's determination of the amounts questioned by either party.

The parties disagreed about what constituted an advance. Nancy testified that she understood that only money spent for things above and beyond her normal budget during the action would be treated as an advance. Her attorney fees associated with this action and her tuition at William Mitchell College of Law were the only expenses she considered an advance.

Michael testified that Nancy agreed that *all* money paid to her during the action was an advance against her ultimate share of the marital estate. He, however, refused to account for "advances" to him.

He testified that she agreed to take only 40% of the marital assets; to value the marital estate as of April 1981; and to allow him custody of their minor child for six months of each year. Nancy flatly denies making these agreements. There are no documents supporting his claims.

A day after this case was tried the court issued a decree of legal separation nunc pro tunc to the date of the first agreement executed by the parties. Two months later the findings of fact, conclusions of law, order for judgment, and judgment and decree were issued. Michael appeals raising the following issues.

## ISSUES

1. Did the trial court abuse its discretion in ignoring or not giving effect to the intention of the parties' agreements?

2. Did the trial court properly determine the time to value the marital assets?

3. Did the trial court properly value and distribute the marital estate?

4. Did the trial court abuse its discretion in determining the amount of child support and spousal maintenance?

5. Did the trial court omit an asset of the parties?

## ANALYSIS

■ 1. The trial court in a dissolution proceeding is charged with the duty of ascertaining the value of the marital estate and in making a distribution in a "just and equitable" fashion. Minn.Stat. § 518.58 (1982). The decision by the trial court will only be overturned upon a showing of abuse of discretion. *Taylor v. Taylor*, 329 N.W.2d 795 (Minn.1983).

Michael first argues that the trial court abused its discretion in ignoring the agreements the parties made in April 1981 and November 1982. The court's findings specifically acknowledged the existence of these agreements.

He next argues that the court abused its discretion in failing to construe the agreements to be a decree of legal separation so that property acquired by either party after the date of the agreements was to be awarded to that party and not deemed marital property.

This argument is contrary to the testimony of the parties. Both testified that the primary purpose for entering these agreements was to maximize income tax savings. Their 1982 agreement also supports the finding that the parties agreed to submit the question to the court if they could not resolve what amounts should be treated as advances against the final settlement. Since the evidence clearly shows that the parties could not agree what amounts should be treated as advances, the court, acting pursuant to their agreement, properly resolved these issues.

Michael, however, contends that the court should have determined only the amount of expenses already specified as advances by the agreements.

What the parties intended to be an advance is disputed. The 1982 agreement specifies that "all money received during 1981 and 1982 is an advance against final settlement." The trial court did not interpret this provision literally for four reasons. First, the testimony of both parties demonstrates that their intent for entering into these agreements was to take advantage of tax savings. Second, Nancy testified that she understood an advance to be only that money spent for things above and beyond her normal budget during the pendency of the action. Third, Michael refused to account for the money he received and spent during the pendency of the dissolution. Fourth, any ambiguity in a contract should be construed against its drafter, in this case Michael. The trial court correctly interpreted the agreements.

■ 2. Michael next contends that the trial court abused its discretion in valuing the marital estate at the time of trial, and not in April 1981. He testified that Nancy agreed to valuation as of April 1981. She denies such an agreement. There is no document supporting this claim.

Michael testified that, consistent with their agreement, he immediately obtained valuations of his business investments. However, the evidence shows that he did not seek this information until at least nine months later.

The trial judge again apparently found Nancy more credible, and this was well within his discretion under Rule 52.01, Minn.R.Civ.P.

■ 3. Michael next contends that the court abused its discretion in equally dividing the marital estate, and in valuing several assets. He testified that Nancy agreed to take only 40% of the marital assets. He produced no documents substantiating this claim. Nancy flatly denied making such an agreement. The court believed Nancy. There is nothing showing this to be an abuse of discretion.

Michael argues that the court abused its discretion in valuing several items of personal property, a retirement fund, an investment account, and a corporation which he is sole shareholder. Given Michael's failure to present evidence, the trial court properly evaluated and distributed these assets.

Michael next contends that because Nancy waived claim through their April 1981 agreement to any income earned by him after their separation she is not entitled to money accumulated in a deferred compensation plan as a result of his playing major league baseball during the 1981 season. Nancy contends that the deferred compensation plan is an asset, not income, and that she only waived claim to the income he might earn and receive during the pendency of this action. She testified that she agreed to this waiver so he would go back and play ball and not worry that she was going to take that income from him. She asserts that her waiver was not of a retirement benefit which she is entitled to share. The trial court agreed that only income received was waived.

■ A deferred compensation plan is more analogous to a pension plan than to income. *See Kruger v. Kruger*, 73 N.J.

464, 375 A.2d 659 (1977). The Minnesota Supreme Court has held that pensions, even nonvested or nonmatured, are property, subject to equitable distribution. *Janssen v. Janssen*, 331 N.W.2d 752 (Minn. 1983). Here, the trial court properly found the deferred compensation plan to be marital property. It equally distributed this asset and required each party to pay taxes on his or her respective share of the proceeds.

■ 4. Michael next argues that the court erred in ordering him to pay spousal maintenance because the court did not specifically find that Nancy met the requirements of Minn.Stat. § 518.552 (1982).

The trial court did not make a specific finding that Nancy met the statutory requirements, but the uncontroverted evidence shows that Nancy still has a child at home, her expenses are far in excess of her income, and she will incur educational expenses for the next three to four years while she attends law school so she can become self-supporting. Therefore, the court did not err in granting her spousal maintenance for a limited time.

■ Michael asserts that he should not have to pay child support because trusts were set up for the children and these trusts are adequate to provide for the children's needs. These trusts were set up by both Michael and Nancy during their marriage for each child's education. Only one of their three children is a minor. To allow Michael to escape his child support obligations to this minor child would be unfair, and defeat the intent of providing education for all of the children. Therefore, the trial court did not abuse its wide discretion in this matter.

■ 5. Nancy contends that the trial court erred in not ordering disclosure of Michael's 1982 tax refund and requiring him to pay her one half of the refund attributable to income earned before the April 1981 agreement. At the time of trial he had not filed his separate 1982 income tax return. Therefore, there was no evi-

dence as to whether a refund would occur and if so how much.

We find that the parties' intent in filing separate tax returns was to maximize their tax savings. Had Michael received his refund by the time of trial it would have been a cash asset and that portion of the return attributable to income earned before the April 1981 agreement would have been divided in half, consistent with the court's equitable distribution of the parties' assets. Therefore, Michael must disclose the amount of the 1982 tax refund and give to Nancy one-half of the refund attributable to income earned before the April 1981 agreement.

## DECISION

We affirm on the first four issues and remand to the trial court for disposition of the 1982 tax refund in accordance with this opinion.