In re the Marriage of Barbro K. ROEHRDANZ, Petitioner, Respondent,

v.

George M. ROEHRDANZ, Appellant.

No. C5-87-20.

Court of Appeals of Minnesota.

Aug. 11, 1987.

Review Denied Oct. 28, 1987.

William Mavity, James G. Ryan, Mavity & Ryan, Minneapolis, for respondent.

Gary W. Goldsmith, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and WOZNIAK and CRIPPEN, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

Appellant George Roehrdanz challenges the trial court's decisions on custody, the valuation of his law practice, the determination of his annual income, the value and division of the parties' retirement fund, the award of attorney's fees, and the time period within which appellant is required to make cash payments to respondent Barbro Roehrdanz. We affirm in part and reverse and remand in part.

## FACTS

The parties were married in 1964 and have four children. Custody involves the three minor children, Fredrik, Alexandra and Erik, who were 12, 10 and 6 years old, respectively, at the time of the dissolution.

George has been a practicing attorney throughout the marriage. In 1975 he moved his law offices to the parties' home, converting the second and third floors to five offices and a law library. From 1971 to 1974, Barbro worked approximately 20 hours per month at the American Swedish Institute. She quit this job a few weeks before Fredrik was born in 1974. She returned to work at the Institute in 1978, working about 15 hours a week, and by 1981 her hours had increased to about 30 hours a week.

Barbro testified that she was primarily responsible for raising the children, although beginning in 1975 she had assistance from live-in housekeepers and babysitters. In 1974 the parties bought a lake cabin where Barbro and the children have spent their summers.

In February 1984, Barbro brought this dissolution action. In October 1984, the parties worked with the Hennepin County Department of Court Services and arrived at an agreement whereby George retained temporary custody of the children, with Barbro having visitation rights. Although George had been ordered to pay Barbro $380 per month for temporary maintenance commencing on October 15, 1984, he did not make a payment until March 1986 when, after a long series of motions, hearings, and appeals, he was ordered to make the payments or go to jail.

The Department of Court Services conducted a custody study which recommended physical custody be placed with George because he was better able "to provide consistency to the children for their home and schooling, and because the children prefer to remain with him in the present plan * * *." At trial, a child psychologist testified that both parents care about their children and have good parenting skills. He said he would support either parent for physical custody. George, however, rejected joint custody as a viable option, testifying that "the differences between Barbro and myself are so extreme that I do not foresee any possibility of making decisions jointly in any kind of harmony or spirit of cooperation."

The court found that Barbro was the primary parent throughout the marriage

until the separation and awarded her sole legal and physical custody of the children. The court also made findings concerning the value of George's law practice, the value of the parties' retirement fund, and the amount of George's annual income. The court awarded Barbro $20,000 for attorney's fees and gave George 30 days to pay the fees. Additionally, the court gave him three months to pay Barbro $35,000 as part of the property distribution. The court's decisions in these areas form the basis for the issues George raises on appeal.

George brought a motion for amended findings or for a new trial, but did not specify how he wanted the findings amended. His motion for a new trial claimed only that there were irregularities in the proceedings and that the court's decision was not supported by the evidence and was contrary to law. He attached a memorandum in support of his motion wherein he claimed the court erred with respect to its decisions on custody, annual income, the treatment of the retirement fund, and the deadlines the court set for him to pay Barbro. The court denied the motion entirely, and this appeal followed.

## ISSUES

1. Did the trial court err in awarding custody of the parties' three minor children to respondent?

2. Is the trial court's finding concerning the value of appellant's law practice clearly erroneous?

3. Did the trial court err in its treatment of the parties' retirement fund?

4. Did the trial court err in determining appellant's annual income for purposes of setting child support and maintenance?

5. Did the trial court err in awarding respondent attorney's fees?

6. Did the trial court err in refusing to provide a payment schedule for appellant?

1. The court further found that respondent is not an unfit parent for custody. Appellant does not

## ANALYSIS

1. Appellate review of custody determinations is limited to whether the trial court "abused its discretion by making findings unsupported by the evidence or by improperly applying the law." *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). The trial court's findings must be sustained unless clearly erroneous. *Id.*

 The trial court found that "throughout the marriage [respondent] was the children's primary parent and caretaker."[1] Because of the intimacy a child and the primary parent enjoy, there is a presumption that custody of a child should be given to the primary parent. *Pekarek v. Pekarek*, 384 N.W.2d 493, 497 (Minn.Ct. App.1986). George challenges the court's finding, arguing that the court failed to make particularized findings concerning the primary parent. We do not agree.

The court properly considered the appropriate criteria concerning the primary caretaker and, based on the information and facts presented at trial, made findings of fact consistent with *Pikula*. See *Pikula*, 374 N.W.2d at 713–14. The record shows that Barbro performed the daily tasks of parenting. During the marriage, she worked minimally outside the home, while George was engaged full time developing and running his solo law practice. Barbro watched over the children, arranging for and transporting them to their activities. She was primarily responsible for doing the laundry, shopping, cooking, and other household chores, although she had assistance from housekeepers and babysitters. She also spent the summers with the children at the lake cabin. Further, although she worked part time, she took her job at the Institute only on the condition, acceptable to her employer, that her children would always come before work; as a result, her job did not interfere with her duties as a mother.

 George concedes that Barbro may have been the primary parent during the early years of the marriage, but he claims

challenge this finding on appeal.

that he emerged as the primary parent during the last year before the parties separated. This court, however, has stated that the proper period of time at which the trial court is to look in making its decision is the time during the marriage. *Hemingsen v. Hemingsen*, 393 N.W.2d 414, 417 (Minn.Ct.App.1986). Here, the evidence amply supports the court's finding that, from the time the parties were married in 1964 until their separation in 1984, Barbro's "primary roles were as mother, wife and homemaker."

■ George insists nevertheless that the trial court failed to consider the children's expressed preference for him as custodial parent and failed to consider other statutory factors in determining the best interests of the children. The preference of a minor child, however, is only one factor to consider in determining custodial placement, *see* Minn.Stat. § 518.17, subd. 1(b) (1986), and the decision whether to interview a child to ascertain a preference is within the trial court's discretion. *Uhl v. Uhl*, 395 N.W.2d 106, 110 (Minn.Ct.App. 1986).

■ The court's finding concerning custody shows that the court addressed the relevant statutory factors, including the children's preference. The court referred to the custody study conducted by the Department of Court Services which recommended physical custody be placed with George because he was better able to provide consistency and because the children had expressed a preference for him. The court rejected the recommendation primarily because of the effect the separation had on the children, especially on the youngest child Erik, who was five at the time. The court made extensive findings related to the custody of the children, especially Erik. Although the court did not make specific findings on each of the statutory factors, it need not do so if the findings as a whole reflect that the court properly considered the relevant factors in reaching its decision. *Rosenfeld v. Rosenfeld*, 311 Minn. 76, 83, 249 N.W.2d 168, 171–72 (1976). A careful reading of the court's findings clearly indicates that all factors concerning custody were taken into consideration.

The trial court's findings further reflect its belief that the best interests of the children are served if all of them are placed with their mother. Although the trial court has discretion to split custody of children, such decisions "are viewed as 'unfortunate' and are carefully scrutinized." *Rinker v. Rinker*, 358 N.W.2d 165, 168 (Minn.Ct.App.1984) (quoting *Schultz v. Schultz*, 266 Minn. 205, 208, 123 N.W.2d 118, 121 (1963)). Here, the court specifically found that the children rely on each other for friendship and socialization. One of the statutory factors to consider and evaluate is the "interaction and interrelationship" of the child with his or her siblings. Minn.Stat. § 518.17, subd. 1(c). The court's finding, based upon the evidence, clearly shows that the children are better off if they remain together.

Finally, the court found that joint legal custody was not a viable option given the parents' inability to communicate or agree on important affairs in the children's lives, and the evidence and George's statements clearly support this finding.

■ 2. George next contends that the trial court erred in valuing his law practice. The court valued the practice at $37,391.81, which reflects: (1) $2,500 for work in progress—contingency cases; (2) $13,403.06 for accounts receivable; (3) $3,488.75 for work in progress—hourly; and (4) $18,000 for library, equipment and furnishings. He claims the court should have excluded the amounts for work in progress and accounts receivable because they are not tangible assets, but rather represent future income for his personal services. George, however, made no claim that the valuation was erroneous in his motion for a new trial. Accordingly, the only issue preserved for appeal is whether the evidence is sufficient to support the findings and whether the findings support the conclusions of law. *See Gruenhagen v. Larson*, 310 Minn. 454, 458, 246 N.W.2d 565, 569 (1976).

Here, the figures the court used in valuing the law practice were those that

George himself expressly offered in his proposed findings. At trial, Barbro's expert testified that the value of the law practice was approximately $103,000. The trial court rejected this amount and accepted George's value, which he now claims as error. Not only is George deemed to have acquiesced to this finding of fact, but as a finding it is not clearly erroneous.

■ 3. George also challenges the trial court's treatment of the parties' retirement fund. At the time of the trial, the value of the fund was $109,051. Approximately two months before trial, however, George withdrew about $33,000 from the account, in violation of a court order. The court found that he used the money to pay his past due obligations that were not necessities. The court added the withdrawal back into the marital estate, valuing the fund at $142,011, and awarded Barbro $71,005.50, with the balance going to George.

George first argues that the court should have awarded 50% of the value of the fund, not a fixed dollar amount. However, he failed to preserve this issue for appeal by not raising it in his motion for a new trial. The only issue preserved is whether the court erred in not deducting at least a portion of the withdrawal from the marital estate because that money was used to pay marital debts.

George claims he used some $23,000 of the $33,000 withdrawal to pay marital debts, specifically: (1) about $13,000 to pay the children's past due tuition at Blake School; (2) about $3,000 to repay a bank loan he had taken out to pay taxes; and (3) $7,000 to pay off an IRS tax obligation. On appeal, he asks that he receive credit for these payments and that an adjustment be made in the property division to maintain an equal distribution. We decline to do so.

George withdrew the funds in violation of a court order. In so doing, he deprived the trial court and Barbro of any opportunity to question the legitimacy of the withdrawal. Aside from George's own testimony as to how the money was used, the only documentary evidence he produced was a letter sent by Blake School informing him that the children would be asked to withdraw if the past due tuition was not paid. Otherwise, he offered no receipts or check stubs or other documentary evidence or tracing of funds to corroborate his testimony as to how any of the money was used.

Under the circumstances, the trial court was justified in rejecting George's unverifiable testimony and acted within its discretion in adding back the withdrawal before dividing the retirement fund.

■ 4. George next argues the trial court erred in determining annual income. The court had a difficult task in ascertaining George's income because his testimony concerning his income was inconsistent and the documentary evidence was incomplete. Consequently, the court relied on Schedule C of George's federal income tax returns in calculating a net income figure. The court took the average of George's net income from 1980 to 1985, arriving at an annual net income of $63,323. Although George concedes the court properly used his tax returns to arrive at a net income figure, he insists that the court should have used only the last three years (1983–1985) in averaging his income. He claims these years are more representative of his current income because his business has dropped from the preceding three years.

In dissolution proceedings, parties are called upon to supply essential information in a proper way and "must make a full and accurate disclosure of their assets and liabilities." *Bollenbach v. Bollenbach*, 285 Minn. 418, 428, 175 N.W.2d 148, 155 (1970). Failure to do so "justifies inferences adverse to the party who conceals or evades." *Id.* Based on the most accurate information available, the trial court arrived at an average annual income, which the court characterized as conservative. If the court's decision has an acceptable basis in fact and principle, a reviewing court must affirm the decision, even if we might have made a different disposition. *Id.* at 426–27, 175 N.W.2d at 154. Under the facts presented here, the court did not err in determining George's income and its finding is not clearly erroneous.

5. George next argues that the court abused its discretion in awarding Barbro $20,000 for attorney's fees. The decision to award attorney's fees rests almost entirely within the trial court's discretion and should not be disturbed absent a clear abuse of that discretion. *Kirby v. Kirby*, 348 N.W.2d 392, 394 (Minn.Ct.App. 1984). The trial court found that Barbro's attorney's fees were fair and reasonable, given the number of hearings, the unwillingness of George to comply with discovery requests, and the length of the trial. The court also found, which is fully justified by the record, that George's conduct was calculated to cause delay and hardship, which necessarily generated greater legal fees. *See Smolecki v. Smolecki*, 386 N.W.2d 846, 849 (Minn.Ct.App.1986). Under the circumstances, the trial court did not err in awarding attorney's fees.

6. Finally, George argues the court abused its discretion by giving him only 30 days to pay the $20,000 for attorney's fees and three months to pay $35,000 to satisfy Barbro's portion of the marital property. He argues that he should be allowed a more extended period of time to make the payments because he has no liquid assets other than the retirement fund. He claims that a withdrawal from the fund would be subject to excessive taxes. The record supports his contention.

In his motion for a new trial, George requested that he be allowed five years to pay the amounts owed to Barbro, secured by a lien against the homestead. The court, however, refused the request, explaining that he had ample time to provide the court with a basis for determining a payment schedule, but failed to do so at any time prior to the conclusion of the case. Noting George's assets and his failure to make periodic payments to Barbro while the case was pending, the court found no basis for establishing a payment schedule.

While it may not be impossible for George to make the lump-sum payments, we recognize the difficulties he may encounter as a result of the tax consequences of a withdrawal from the retirement fund. As the supreme court has stated:

Ordinarily the division of property and allowance for alimony and support should be directed according to a plan which permits payments over a period of time. This method is to be preferred because it avoids the disadvantages of forced liquidation of assets, some or all of which may be pledged or otherwise encumbered. It permits more flexibility in a proper effort to minimize tax burdens occasioned by the property disposition.

*Bollenbach*, 285 Minn. at 438, 175 N.W.2d at 160–61 (footnote omitted). Accordingly, we believe the interests of justice are furthered if George is allowed a greater period of time within which to satisfy his obligations to Barbro. We therefore remand for a determination of a reasonable payment schedule, based on the parties' proposals, whereby the obligations imposed by the court can be accomplished so as to assure Barbro of her payments without needless hardship to either party.

## DECISION

With the exception of the court's refusal to provide a payment schedule, the court's decision is otherwise affirmed in its entirety.

Affirmed in part, reversed and remanded in part.