**In re Jane McNaught STAGEBERG, petitioner, Appellant,**

v.

**Mark Nissi STAGEBERG, Respondent.**

No. A04–1230.

Court of Appeals of Minnesota.

May 3, 2005.

As Amended May 6, 2005.

Alan C. Eidsness, Timothy Mulrooney, Henson & Efron, P.A., Minneapolis, MN, for appellant.

Robert A. Standke, Standke, Greene & Greenstein, Minnetonka, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; TOUSSAINT, Chief Judge; and HUDSON, Judge.

## O P I N I O N

HUDSON, Judge.

On appeal from a judgment dissolving the marriage of appellant-wife Jane Stageberg and respondent-husband Mark Stageberg, husband challenges the determination that certain contingency fees his law practice was earning when the marriage was dissolved should be treated as marital property. Wife argues that the district court undervalued these interests. In addition, wife argues that the district court abused its discretion by treating her nonmarital interest in certain property as marital, and she moves to strike portions of husband's brief and appendix. Husband argues that the record does not support the determination that wife has a nonmarital interest in the home and that the district court overvalued the parties' golf-club membership. We reverse the district court's valuation of the marital interest in the contingent fees and the treatment of wife's nonmarital interest in the property distribution and remand for revaluation of the contingency fees and any necessary adjustment of the property distribution. We otherwise affirm the district court and grant wife's motion to strike.

## FACTS

The parties married in September 1990 and separated in June 2002. The marriage produced no children. Wife has been in the private practice of psychology for twenty-two years, having obtained her Ph.D. in psychology in 1982. Wife's clients pay her upon services rendered. Husband is self-employed as an attorney and has practiced almost exclusively in the area of plaintiff's personal-injury cases since 1994.

Wife petitioned to dissolve the marriage, and the district court entered a December 2002 judgment dissolving the parties' marriage but reserving all other issues for settlement or trial. The parties stipulated to the value of most of their assets and the division of their debts. The parties appeared for trial in December 2002 on remaining issues.

At trial, husband produced an exhibit detailing the cases he was handling on a contingency-fee basis as of the July 2002 stipulated valuation date. Wife's expert, Charles T. Hvass, Jr., testified that the exhibit included cases that had settled either before the valuation date with fees received or due to be received by husband at the time of trial, as well as cases that were relatively new and would require considerable post-marital effort. Wife argued that any portion of a contingency fee re-

ceived after the valuation date as a result of work husband did before the valuation date was a marital asset and that she was entitled to half the recovery.

The district court issued its amended findings and conclusions in January 2004. Wife subsequently moved for amended findings and/or a new trial.

In May 2004, the district court issued a second set of amended findings in which it found that neither party required maintenance from the other but that husband's business was becoming more difficult due to the loss of several key referrals, changing attitudes of juries and insurance companies, and a diminished case volume because of increased competition. Regarding the property settlement, the district court ruled, in relevant part, that (a) while wife traced a nonmarital interest to the parties' homestead, husband would be awarded half of wife's nonmarital interest because not doing so would work an unfair hardship on husband, who had used nonmarital assets to pay off marital debt that had not resulted in acquisition of an asset; (b) while the homestead was purchased before the parties' marriage, the parties purchased it jointly and used marital funds to pay the mortgage and make improvements, creating a marital interest in the homestead and the increase in its value; (c) the parties' golf club membership was worth $35,000—the cost of a new membership.

In its amended findings, the district court acknowledged that the majority of jurisdictions view contingency fee contracts as having "marital value," but deter-

mined that the best way to determine that value is to apply what it called "The Historical Average Income Approach." In this approach, the district court assumed a 40% tax rate and calculated husband's average annual net profit over the past five years (excluding costs). Because husband would resolve some cases each year and take on additional cases, the court then reduced husband's net profit by 50% to reflect the average declining percent of marital effort in the cases that are concluded during the course of a year. The court found that wife was entitled to one-half of the remaining after-tax marital share.[1] The district court entered judgment on May 12, 2004. This appeal follows.

## ISSUES

I. Are portions of husband's brief and appendix referring to a matter that the parties agreed would "have no impact" on the district court's valuation decision outside the record on appeal?

II. Are unrecovered contingent fees derived from work performed during a marriage marital assets?

III. Did the district court clearly err by valuing wife's marital interest in the contingent fees using a historical average-income approach?

IV. Did the district court abuse its discretion by awarding husband an interest in wife's nonmarital property?

V. Is the district court's characterization of wife's nonmarital interest in

---

1. The district court's calculation summary is as follows:

| | |
|---|---|
| Annual Gross Receipts 1997–2002 | $412,861 |
| Less Average % of Business Costs | x .697 |
| Average Net Profit | $287,764 |
| Less 40% Tax Effect | x .60 |
| After–Tax Profit | $172,658 |
| 50% Reduction Reflecting Decline in Marital Effort | x .50 |
| Net Marital Share | $ 86,329 |
| Less Husband's Half | x .50 |
| Wife's Marital Share | $43,164.50 |

the homestead supported by the record?

VI.  Did the district court abuse its discretion by valuing the parties' golf-club membership at the cost of obtaining a new membership?

## ANALYSIS

### I

■ With respect to his legal practice, husband's brief and appendix refer to a matter that the parties agreed would "have no impact" on the valuation of his practice and would be "disregarded by the parties and the Court in the determination of the assets and liabilities of the parties." Wife moves to strike these portions of husband's brief and appendix as containing a matter outside the record on appeal. The record on appeal includes the papers filed in the district court, the exhibits, and the transcript of the proceedings, if any. Minn. R. Civ.App. P. 110.01. Appellate courts may not consider matters outside the record on appeal and will strike references to such matters from the parties' briefs. *Fabio v. Bellomo*, 489 N.W.2d 241, 246 (Minn.App.1992), *aff'd* 504 N.W.2d 758 (Minn.1993). Here, because the parties agreed that the contested material would not be considered by the district court, they functionally agreed that it was outside the record, and we grant wife's motion to strike.

### II

■ The district court held that the fees stemming from husband's contingent-fee cases in progress on the valuation date are marital property to the extent that those fees are attributable to work husband did on the cases before the valuation date. Husband challenges the determination that any property interest in these contingent-fee cases is marital. Whether property is marital or nonmarital is a legal question, but a reviewing court defers to the district court's underlying findings of fact. *Olsen v. Olsen*, 562 N.W.2d 797, 800 (Minn.1997). The extent to which a marital estate can include contingent fees for work in progress on the valuation date in a marital dissolution is a question of first impression for this court.[2]

Here, husband challenges the district court's determination of contingency fees as marital property arguing that: (1) contingent fees are only an expectation interest, not an enforceable contract right; (2) contingent fees represent future income (or the potential for future income) and

---

2.  This court has upheld property distributions in prior cases that considered contingency fees and the value of work-in-progress as marital assets without specifically addressing whether the assets in question should be considered marital property. *See Roehrdanz v. Roehrdanz*, 410 N.W.2d 359, 362–63 (Minn.App.1987) (upholding district court's findings of facts in valuing a law practice that included income from work-in-progress contingency fees), *review denied* (Minn. Oct. 28, 1987); *Peterson v. Peterson*, 367 N.W.2d 90, 92 (Minn.App.1985) (upholding an expert valuation of a law firm's assets in a marital dissolution that included shareholder's equity, accounts receivable, work in progress, and known contingency fee settlement offers), *review denied* (Minn. July 17, 1985). Thus, these cases are of limited assistance in addressing whether the contingent fees at issue here can be treated as marital property. *See Skelly Oil Co. v. Comm'r of Taxation*, 269 Minn. 351, 371, 131 N.W.2d 632, 645 (1964) (stating " '[a]lways the language used in an opinion must be read in the light of the issues presented' ") (quoting *Sinclair v. United States*, 279 U.S. 749, 767, 49 S.Ct. 471, 477, 73 L.Ed. 938 (1929)). We also note that the record does not address whether husband's legal practice has a separate legal existence as some type of partnership or corporation. Therefore, this appeal does not involve questions about contingent fees payable to an entity other than husband, such as a separately existing law firm.

cannot be considered a marital asset; and (3) contingent fees are too remote, speculative, and uncertain to be considered a marital asset.

> Generally, "[m]arital property" is property, real or personal, including vested public or private pension plan benefits or rights, acquired by the parties, or either of them, to a dissolution ... at any time during the existence of the marriage relation between them, ... but prior to the date of valuation under section 518.58, subdivision 1. All property acquired by either spouse subsequent to the marriage and before the valuation date is presumed to be marital property.... Each spouse shall be deemed to have a common ownership in marital property that vests not later than the time of the entry of the decree in a proceeding for dissolution or annulment. The extent of the vested interest shall be determined and made final by the court pursuant to section 518.58.

Minn.Stat. § 518.54, subd. 5 (2004).

In *Janssen v. Janssen*, 331 N.W.2d 752 (Minn.1983), the supreme court addressed "whether a nonvested, unmatured pension [of one of the parties] is marital property which can be divided in a marital dissolution proceeding." *Id.* at 753. In doing so, *Janssen* recited the definition of marital property set out above, stated that the definition was "expansive," and noted that "[a] *vested* pension refers to a pension right which is not subject to a condition of forfeiture if the employment relationship terminates before retirement" and that "[a] *matured* pension is one to which the employee has an unconditional right to immediate payment." *Id.* at 753–55 (emphasis in original). In resolving the question, it stated:

> [W]hether a nonvested pension right is marital property is substantially answered by our recent opinion in *Chris-*

*tensen v. Minneapolis Municipal Employees Retirement Board*, 331 N.W.2d 740 (Minn.1983), in which we held that a public employer's promise of a pension to the appellant in that case was binding on the public employer under the principles of promissory estoppel, overruling *Gibbs v. Minneapolis Fire Dept. Relief Ass'n*, 125 Minn. 174, 145 N.W. 1075 (1914), and other cases that had used a gratuity approach to public pension or retirement plans. Now, in consequence, the interest appellant holds becomes more than a mere expectancy—it becomes a chose in action, a contractual right: a property interest.

*Id.* at 754 (emphasis omitted). Thus, the crux of *Janssen's* holding that an unvested, unmatured pension can be property for dissolution purposes was that (a) the employed spouse had, during the marriage, entered a pension contract under which that spouse acquired certain rights, albeit contingent, to benefits; and (b) the *contractual* nature of the *right* to receive benefits under the pension meant that the employed spouse had more than a mere expectancy in pension benefits, and therefore that the contingent nature of the contractual *right* to receive benefits did not preclude the right from falling within the "expansive" definition of "marital property." *See id.* at 754–56 (noting supreme court's decision in *Elliott v. Elliott*, 274 N.W.2d 75 (Minn.1978), forecast *Janssen's* holding, even before the definition of marital property in Minn.Stat. § 518.54, subd. 5 was amended to explicitly mention pension interests as property). *Janssen* also noted that "[t]o award one party [the pension as nonmarital property] would ignore the presumption ... that each spouse contributed to the acquisition of property while they lived together as husband and wife." *Id.* at 756. Subsequently, this court has applied a *Janssen*-like rationale to allow clas-

sification of other contingent interests as marital property. *See Salstrom v. Salstrom*, 404 N.W.2d 848, 850–51 (Minn.App. 1987) (incentive stock options); *Marshall v. Marshall*, 350 N.W.2d 463, 466 (Minn. App.1984) (deferred compensation); *VanderLeest v. VanderLeest*, 352 N.W.2d 54, 57–58 (Minn.App.1984) (disability annuity).

We conclude that the portion of a contingent fee for work in progress on the valuation date that is attributable to work done before the valuation date is sufficiently analogous to unvested pensions and incentive stock options and therefore those fees may be treated as marital property for dissolution purposes. Significantly, under Minnesota law, once a legal proceeding is started, an attorney has a lien for compensation on any money involved. Minn. Stat § 481.13 (2004). Furthermore, the right to compensation for the reasonable value of services continues even if the attorney rightfully withdraws from representation or the client discharges the attorney. *Nordling v. N. States Power Co.*, 478 N.W.2d 498, 501 (Minn.1991); *Ashford v. Interstate Trucking Corp. of Am., Inc.*, 524 N.W.2d 500, 502–03 (Minn.App.1994). Thus, like a pensioner's ability to collect on an unvested, unmatured pension, counsel's ability to collect a fee is a right vesting before the valuation of that right, and the existence of counsel's *right* is not affected by the fact that the actual recovery of a fee depends on a contingent event—a favorable resolution of the case.

The conclusion that contingent fees, to the extent attributable to work done before a valuation date, can be treated as marital property is also consistent with the idea that, in Minnesota, accounts receivable are generally considered marital property. *Davey v. Davey*, 415 N.W.2d 84, 88 (Minn.App.1987), *review denied* (Minn. Jan. 20, 1988). It is likewise consistent with foreign authority. According to the Arizona Court of Appeals, "while it is true that an attorney is not entitled to the full benefit of his contract until the contingency upon which it is based is fulfilled, this does not mean that valid enforceable contract rights do not exist regardless of its fulfillment." *Garrett v. Garrett*, 140 Ariz. 564, 683 P.2d 1166, 1169 (Ct.App.1983). Likewise, the Supreme Court of Arkansas noted that "[i]t is axiomatic that the right to perform a contract and to receive its profits, and the right to performance by the other party, are property rights entitling each party to the fulfillment of the contract by performance." *McDermott v. McDermott*, 336 Ark. 557, 986 S.W.2d 843, 847 (1999). Because the Arkansas legislature expressly protected the rights of attorneys in their fee agreements by codifying an attorney's lien statute, the Arkansas court held that contingency-fee agreements are enforceable contract rights, and those rights are property rights. *Id.*[3]

Husband correctly notes that treating contingent fees as income if and when they are received is consistent with Minnesota's pension-related dissolution authorities. *See Kruschel v. Kruschel*, 419 N.W.2d 119, 122 (Minn.App.1988) (noting authority exists for proposition that pensions "should be viewed as property or income, but not both"). Treating contingency fees as income, however, is inconsistent with the above-cited Minnesota authority on the characterization of contract rights. In addition, treating the fees as income rather than property would preclude wife from

---

**3.** While the majority of jurisdictions considering this issue have arrived at the conclusion we do here, that contingent fees are marital property to the extent they were earned based on work done before a marriage is dissolved, some jurisdictions have ruled otherwise. *See, e.g., Roberts v. Roberts*, 689 So.2d 378, 381–82 (Fla.Dist.Ct.App.1997).

receiving a portion of the fees as part of the property division. Under these circumstances, we reject husband's argument that the fees must be deemed income.

Finally, husband argues that the fees are too speculative to be characterized as property. Husband's argument has support in a minority of jurisdictions.[4] With contingent-fee cases, the attorney is not assured of earning anything for efforts expended, nor does he acquire a vested interest in the actual agreed contingency fee unless the client recovers. But, as noted above, the contingent nature of the fees does not preclude their treatment as property. Moreover, unless one assumes that husband will lose *all* of the contingent-fee cases he had in progress on the valuation date, the root of husband's third challenge to the treatment of the fees as marital property lies in *valuing* the marital interest in the fees, not treatment of the fees as marital property. Furthermore, characterizing contingency fees as marital assets is, in this case, not inequitable. During the marriage, both parties bore the impact of delayed contingent-fee recovery. During those delays, the parties relied on wife's income to meet expenses, precluding use of that income to generate marital assets. Therefore, we affirm the district court's decision to treat as marital property the portion of the contingent fees generated by husband's contingent-fee cases that is attributable to work husband did on those cases before the valuation date.

### III

Both parties challenge the district court's valuation of the marital interest in the contingent fees generated by husband's cases in progress on the valuation date. A district court's valuation of an asset is a finding of fact and an appellate court will not set it aside unless it is clearly erroneous. *Hertz v. Hertz*, 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975); *see* Minn. R. Civ. P. 52.01. "Exactitude" in valuing an asset "is not required … it is only necessary that the value arrived at lies within a reasonable range of figures." *Johnson v. Johnson*, 277 N.W.2d 208, 211 (Minn.1979); *see Hertz*, 304 Minn. at 145, 229 N.W.2d at 44. Here, the district court did not individually value husband's contingent-fee cases that were in progress at the valuation date; it assumed that all of those cases constituted a single asset and valued that asset using the "historical average income" method described above.

Both parties contend that the district court "erred" in applying this method because it is "novel" and "unsupported." We are not convinced that using a "novel" method of resolving a question is necessarily fatal to the resolution of that question, especially where the question is one of first impression. For at least three reasons, however, we are concerned about the lack of support for the "historical average income" method used by the district court. First, the district court did not provide any authority for its approach, and, on appeal, we are cited to none. Indeed, a majority of courts allowing pending contingent-fees cases to be treated as generating a marital interest in yet-to-be-recovered fees instruct the district court to reserve jurisdic-

---

4. *See, e.g., Roberts,* 689 So.2d at 381 (holding that contingency fees for cases pending at the time of distribution are not marital property because the "value of those cases is highly speculative until the occurrence of the contingency vesting the right to compensation under the contract"); *Goldstein v. Goldstein,* 262 Ga. 136, 414 S.E.2d 474, 476 (1992) (refusing to characterize contingent-fee agreement as marital assets because it is "nearly impossible" to gauge the amount of work necessary following the divorce to collect the fee).

tion over the fees until the underlying actions are resolved.[5] Second, and more importantly, by using an annual-income figure in its formula and applying the formula to only one year of husband's practice of law, the district court implicitly assumed that all of husband's contingent-fee cases that were in progress on the valuation date would be resolved within one year of that date. This assumption is supported neither by evidence in this record nor by general experience. *See* Minn. R. Evid. 201 (addressing judicial notice). Third, because the judgment *currently* awards wife a share of the marital interest in fees husband has yet to receive, the judgment overstates wife's interest in those fees by not reducing her interest to its present value. *See generally DuBois v. DuBois*, 335 N.W.2d 503, 506 (Minn.1983) (defining "present value" as "the sum which a person would take now in return for giving up the right to receive an unknown number of monthly checks in the future") (emphasis omitted).

■ Thus, on this record, we reverse the district court's valuation of the marital interest in the fees to be generated by husband's contingent-fee cases in progress on the valuation date, and remand for the district court to either value the marital interest in those fees in a legally and factually supportable manner, or to retain jurisdiction over the matter and to calculate and divide the marital interest in the unrecovered contingent fees when (and if) those fees are received. If the district court retains jurisdiction over the question, it shall determine the marital and nonmarital interests in the recoveries based on the pro rata amounts of time husband put into

the cases before and after the valuation date.[6] While we do not require the district court to retain jurisdiction over the contingent-fee question, we note that doing so would be consistent with the "reserved jurisdiction method" of addressing pensions. *See DuBois*, 335 N.W.2d at 505 (describing methods of dividing pensions, including reserved jurisdiction method).

Husband argues that there is no reasonable method for valuing the marital interests in the recoveries from contingent-fee cases that were in progress on the valuation date because (a) any valuation of fees to be received ignores the cost of the losing cases; (b) any attempt by the district court to address how much time was spent on the cases before and after the valuation date would be speculative because attorneys who do contingent-fee cases typically do not keep time records; and (c) retaining jurisdiction would only prolong already contentious dissolution cases by requiring a new evidentiary hearing when each case is resolved.

■ But husband's first concern misconstrues the nature of the recovery. To the extent that costs were incurred for cases that did not produce recoveries, those costs were borne during the marriage, and after the valuation date, husband bears those costs individually. While husband's second concern will require a certain amount of candor on his part, he has a fiduciary obligation to present full and complete information to the dissolution court. *See Doering v. Doering*, 629 N.W.2d 124, 130 (Minn.App.2001) (discussing affirmative duty to disclose information present for parties to dissolution proceed-

---

5. *See Garrett v. Garrett*, 140 Ariz. 564, 683 P.2d 1166, 1169 (Ct.App.1984); *In re Marriage of Vogt*, 773 P.2d 631, 632 (Colo.Ct.App. 1989); *In re Marriage of Estes*, 84 Wash.App. 586, 929 P.2d 500, 502 (1997); *Metzner v.*

*Metzner*, 191 W.Va. 378, 446 S.E.2d 165, 173 (1994).

6. We leave to the district court how to apportion costs associated with recovering the fees.

ings), *review denied* (Minn. Sept. 11, 2001); *see also* Minn.Stat. § 518.58, subd. 1(a) (2004) (noting parties' fiduciary duty to each other regarding marital assets). And the district court will be aware that husband's evidence on the question of the amount of time spent on the cases before and after the valuation date may be less than precise. Also, husband's third concern is answered by the fact that foreign authorities often direct what we are giving the district court the *option* of doing here. Furthermore, our supreme court has rejected the idea that a valuation should not occur simply because it is cumbersome to do so. *See Janssen,* 331 N.W.2d at 756 (instructing courts to retain jurisdiction because the "administrative burden [was] not insuperable"); *see also Salstrom,* 404 N.W.2d at 851–52 (devising a fractional "time rule" to value incentive stock options).

## IV

■■■■ Wife challenges the district court's award to husband of part of her nonmarital property. "A trial court's distribution of *marital* property may be entitled to great deference, but its discretion is limited once property has been defined as nonmarital." *Graeber v. Graeber,* 392 N.W.2d 589, 590 (Minn.App.1986). The district court can apportion up to one-half of a spouse's nonmarital property if it finds that the benefiting spouse's "resources or property, including the spouse's portion of the marital property ... are so inadequate as to work an unfair hardship" based on the factors listed in Minn.Stat. 518.58, subd. 2 (2004). "A very severe disparity between the parties is required to sustain a finding of unfair hardship necessary to apportion nonmarital property." *Ward v. Ward,* 453 N.W.2d 729, 733 (Minn.App. 1990), *review denied* (Minn. June 6, 1990). Here, neither the district court's findings nor the record show the hardship required

to apportion wife's nonmarital assets to husband.

The district court found that wife traced a $77,724 nonmarital interest to the homestead and awarded wife the homestead, but did not treat her $77,724 interest therein as her nonmarital property. Instead, it found that husband used about $96,000 of his nonmarital funds to pay marital debts and concluded that an equitable division of property required an apportionment of wife's nonmarital asset to avoid the hardship to husband of not compensating him for his use of his nonmarital funds to pay marital debt. But the district court's findings address the factors in Minn.Stat. 518.58, subd. 2, and show that husband (a) enjoys good health; (b) has achieved professional success; (c) earned an average of $260,000 annually from 1998 to 2001 and reported gross receipts of $461,000 in 2002; and (d) received marital assets worth at least $430,000 in the judgment's equal division of marital property. The district court apportioned husband's part of wife's nonmarital interest because husband's law practice may not be as profitable in 2004 as previously and because husband made nonmarital contributions to the marital estate that the district court could not recognize under the relevant statutes. These findings do not show a disparity between the parties, much less a disparity of sufficient severity to warrant apportionment of wife's nonmarital property. *See Robert v. Zygmunt,* 652 N.W.2d 537, 546 (Minn.App. 2002) (finding that appellant suffered no unfair hardship although respondent's financial circumstances are significantly better due to substantial nonmarital holdings because appellant was in good health, possessed marketable skills, and was able to meet his reasonable expenses).

Husband cites *Hein v. Hein,* 366 N.W.2d 646 (Minn.App.1985), in support of his ar-

gument that the district court did not abuse its discretion in finding unfair hardship. But in *Hein,* the nonmarital interest at issue was much larger relative to the size of the marital estate, and the party receiving the benefit of the division of the nonmarital asset was making less than half of the amount earned by the party who had traced the nonmarital interest that was divided by the district court. *Id.* at 647–48. Here, husband has a professional degree and a lucrative job, complemented by the $430,000 he received in marital property.

## V

■ Husband argues that the record does not support the finding that wife has a nonmarital interest in the homestead. As stated above, whether property is marital or nonmarital is a legal question reviewed de novo, but this court defers to the district court's underlying findings of fact unless they are clearly erroneous. *Olsen,* 562 N.W.2d at 800.

Husband argues that wife loses her nonmarital interest in the homestead because the parties constructed and purchased the homestead during a period of cohabitation that preceded the marriage. Property acquired during cohabitation prior to marriage is not marital property for purposes of Minn.Stat. 518.58 (2004). *Cummings v. Cummings,* 376 N.W.2d 726, 730 (Minn. App.1985). Here, the district court characterized the entire homestead, including the portion acquired prior to the marriage, as marital property, and husband does not challenge this characterization. Thus, the only issue before the district court was the equitable distribution of the marital asset, the homestead. Because wife successfully traced a nonmarital contribution to the purchase of the homestead, the district court did not err in finding that she had a nonmarital interest.

## VI

■ The district court awarded husband the parties' golf-club membership at a value of $35,000. Husband challenges the valuation, alleging that it should be $500, because that is the amount for which the parties could sell the membership back to the golf club. This court will set aside a district court's valuation of asset only if the valuation is clearly erroneous. *Burwell v. Burwell,* 438 N.W.2d 433, 435 (Minn. Ct. App. 1989). The record shows that obtaining a new membership would cost $35,000, and the district court had a willing buyer for the parties' membership at that price-wife. The district court's valuation was reasonable and not clearly erroneous.

## DECISION

Because wife has a marital interest in husband's unrecovered contingency fees, the portion of a contingent fee for work in progress on the valuation date that is attributable to work done before the valuation date shall be treated as marital property for dissolution purposes.

**Affirmed in part, reversed in part, remanded; motion granted.**