*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0356**

In the Matter of the Civil Commitment of:  Brent Charles Nielsen

**Filed August 15, 2016
Affirmed; motion granted
Smith, Tracy M., Judge**

Ramsey County District Court
File No. 62-MH-PR-14-187

Rick E. Mattox, Prior Lake, Minnesota (for appellant)

John J. Choi, Ramsey County Attorney, Stephen P. McLaughlin, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Smith, Tracy M., Presiding Judge; Worke, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH, TRACY M.**, Judge

Appellant Brent Nielsen appeals from the district court's order for indefinite commitment as a sexually dangerous person (SDP) and as a sexual psychopathic personality (SPP).  Nielsen contends that (1) the district court's finding that he did not prove the existence of a less-restrictive treatment program is clearly erroneous, (2) the civil-commitment system is unconstitutional because it is indefinite and retributive, and (3) civil commitment infringes on his right to treatment.  We affirm and grant respondent Ramsey County's motion to strike documents in Nielsen's addendum.

**FACTS**

In 1989, after a jury trial, Nielsen was convicted of murder in the first degree while committing criminal sexual conduct and murder in the second degree with the intent to effect death without premeditation. Nielsen was sentenced to life in prison with the possibility of parole. Since that time, Nielsen has been in the custody of the Minnesota Department of Corrections (DOC).

Due to the possibility of release, the DOC referred Nielsen to the county for judicial commitment, and the county filed a petition for Nielsen's commitment as an SDP and as an SPP.[1] The commitment petition was based, in part, on Nielsen's 1989 conviction, a number of uncharged sexual offenses that Nielsen admitted to, and Nielsen's persistent violent, sexual fantasies, despite years of treatment while in prison.

The district court held commitment proceedings and heard testimony from two examiners, Dr. Peter Meyers and Dr. Mary Kenning. The district court also heard testimony from three DOC personnel: the DOC's sex-offender program director, a DOC therapist, and the DOC administrator who oversees life-sentence offenders. The district court admitted 12 exhibits into evidence, including the examiners' written reports and treatment notes from Nielsen's therapists.

---

[1] Nielsen moved to dismiss the commitment petition, arguing that (1) the petition was premature because he was still in prison and (2) the district court lacked personal and subject-matter jurisdiction. The district court denied the motion, and Nielsen appealed. We affirmed, holding that (1) a county attorney may file a petition to commit a person as an SDP or an SPP, even if the person is serving a life sentence with the possibility of parole, so long as there is good cause to do so, and (2) the district court had personal and subject-matter jurisdiction. *In re Civil Commitment of Nielsen*, 863 N.W.2d 399, 400, 403 (Minn. App. 2015), *review denied* (Minn. Apr. 14, 2015).

In their reports and testimony, Drs. Meyers and Kenning concluded that Nielsen satisfied the criteria for commitment as an SDP and as an SPP. They also agreed that intensive supervised release was not an adequate less-restrictive treatment program and that the best option for Nielsen to receive adequate treatment was commitment to the Minnesota Sex Offender Program (MSOP). Dr. Meyers's report stated that Nielsen has participated in sex-offender treatment but remains "an untreated sex offender" because he has not yet completed "transitional programming." Dr. Kenning's report similarly observed that Nielsen has participated in treatment and "benefitted from interventions" but that individuals like Nielsen "are relatively rare in any treatment population."

Nielsen offered the testimony of the DOC personnel. The therapist and the sex-offender-program director testified about the DOC's sex-offender-treatment program and Nielsen's history in that program. They testified that Nielsen has made some recent progress in sex-offender treatment, but has also experienced a number of setbacks in his treatment over the years. Nielsen withdrew the third DOC witness after a few questions. The district court determined that Nielsen's witnesses were "not competent to express an opinion or offer persuasive testimony" on whether Nielsen warranted commitment as an SDP or as an SPP and on the availability of a less-restrictive treatment program that could meet Nielsen's treatment needs and the requirements of public safety.

The district court also considered the six factors listed in *In re Linehan*, 518 N.W.2d 609, 614 (Minn. 1994) (*Linehan I*), and the five factors from *In re Linehan*, 594 N.W.2d 867, 876-77 (Minn. 1999) (*Linehan IV*), and determined that the factors supported commitment. The district court concluded that, based on clear and convincing

3

evidence, Nielsen met the statutory criteria for commitment as an SDP and as an SPP and ordered that he be indeterminately committed to the MSOP. The district court also found that Nielsen offered no evidence of an alternative treatment program and concluded that he failed to prove that a less-restrictive treatment program is available.

Nielsen appeals.

**D E C I S I O N**

**I.**

***Sufficiency of the evidence***

Nielsen's brief purports to challenge the sufficiency of the evidence for his commitment as an SDP and as an SPP. But Nielsen does not develop this argument and it need not be considered. *See Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn. 1982) (stating that issues not adequately briefed on appeal need not be addressed). At oral argument, Nielsen's counsel emphasized that the focus of this appeal is the district court's finding that Nielsen did not prove the existence of a less-restrictive treatment program. We therefore do not consider the sufficiency of the evidence for Nielsen's commitment.

***Less-restrictive treatment program***

Nielsen argues that the district court's finding that he did not prove the existence of a less-restrictive treatment program consistent with the needs of public safety is clearly erroneous. Nielsen contends that sex-offender treatment in prison and intensive supervised release are less-restrictive treatment programs.

4

After determining that clear and convincing evidence supports commitment as an SDP or an SPP, "the court shall commit the person to a secure treatment facility unless the person establishes by clear and convincing evidence that a less restrictive treatment program is available . . . , and is consistent with the person's treatment needs and the requirements of public safety." Minn. Stat. § 253D.07, subd. 3 (2014). The person opposing commitment has the opportunity to prove the availability of a less-restrictive treatment program but does not have the right to be assigned to it. *In re Kindschy*, 634 N.W.2d 723, 731 (Minn. App. 2001), *review denied* (Minn. Dec. 19, 2001). We will not reverse a district court's finding regarding the availability of a less-restrictive treatment program unless it is clearly erroneous. *In re Thulin*, 660 N.W.2d 140, 144 (Minn. App. 2003). A finding is clearly erroneous if there is no reasonable evidence to support it, leaving this court with the "definite and firm conviction that a mistake has been made." *State v. Evans*, 756 N.W.2d 854, 870 (Minn. 2008) (quotation omitted).

Nielsen relies on the testimony of the DOC therapist and sex-offender-program director that treatment in prison and intensive supervised release are less-restrictive alternatives that would satisfy Nielsen's treatment needs and the requirements of public safety. These witnesses focused generally on the DOC's sex-offender-treatment program and Nielsen's treatment history. The witnesses did not, however, discuss how Nielsen's potential completion of sex-offender treatment in prison and intensive supervised release would fully account for his treatment needs and the requirements of public safety. *See* Minn. Stat. § 253D.07, subd. 3. Moreover, Nielsen's witnesses did not identify a specific facility that "is willing to accept [Nielsen]" upon his potential release into intensive

supervised release. *See id.* The district court acknowledged that Nielsen presented testimony from these witnesses but determined that they were not competent to offer an opinion or persuasive testimony on whether there was a less-restrictive treatment program that could meet Nielsen's treatment needs and the needs of public safety.

The district court's finding that Nielsen did not prove the existence of a less-restrictive treatment program that is consistent with his treatment needs and the requirements of public safety is supported by evidence in the record. Dr. Meyers testified that putting Nielsen "in the community would be reckless" and explained that intensive supervised release would be inadequate at "protecting the public from an individual who has sexually assaulted and also murdered, with a diagnosis that is difficult to treat." Dr. Kenning testified that "hardly any treatment program in the community has any experience with somebody with his history" and further observed that Nielsen "isn't a garden variety offender." Dr. Kenning concluded that Nielsen would be "better off supervised by people from MSOP and on provisional discharge rather than being supervised by [intensive supervised release] agents." She further opined that Nielsen is "unusual enough that he should be monitored by people whose primary focus is treatment." Dr. Meyers's report stated that the MSOP "appears to be the only viable program; one that will assist in Mr. Nielsen's continued sexual offense treatment and at the same time protect the public at large." Dr. Kenning's report stated that commitment "would allow [Nielsen] to remain in a treatment environment and to be gradually returned to the community under supervision as he progresses." Additionally, both examiners' reports noted that Nielsen has undergone sex-offender treatment in prison, but that he has

struggled to engage in certain aspects of treatment. The district court's finding on the existence of a less-restrictive treatment program is not clearly erroneous. *See Thulin*, 660 N.W.2d at 144.

Nielsen protests that treatment in prison, which he must successfully complete to be eligible for parole, is a less-restrictive treatment program. Nielsen's contention is a variation on the argument he raised and we rejected in his prior appeal. *See Nielsen*, 863 N.W.2d at 401-02 (rejecting Nielsen's argument that he could not be civilly committed at the same time he is criminally committed to the DOC). "When a person is civilly committed as an SDP or SPP while also criminally committed to the DOC, the person is serving a dual commitment." *Id.* at 401. Nielsen is now serving a dual commitment, and the fact that he is receiving sex-offender treatment in prison does not establish the existence of a less-restrictive treatment program that "is willing to accept [Nielsen] . . . , and is consistent with [Nielsen's] treatment needs and the requirements of public safety." *See* Minn. Stat. § 253D.07, subd. 3.

***Motion to strike***

In support of his argument that sex-offender treatment in prison and intensive supervised release constitute a less-restrictive treatment program, Nielsen cites to materials from the DOC's supervised-release policies. The county filed a motion to strike the DOC policies from Nielsen's addendum because Nielsen did not present them to the district court.

"The documents filed in the [district] court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases." Minn. R. Civ. App.

7

P. 110.01. The general rule is that an appellate court "may not base its decision on matters outside the record on appeal, and may not consider matters not produced and received in evidence below." *Thiele v. Stich*, 425 N.W.2d 580, 582-83 (Minn. 1988). Accordingly, with limited exception, *see Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins. Co.*, 535 N.W.2d 337, 340 n.3 (Minn. 1995), we "will strike references to [extra-record materials] from the parties' briefs," *Stageberg v. Stageberg*, 695 N.W.2d 609, 613 (Minn. App. 2005), *review denied* (Minn. July 19, 2005).

Nielsen argues that the DOC polices should not be stricken because they are publicly available on the DOC's website. *See State v. Rewitzer*, 617 N.W.2d 407, 411 (Minn. 2000) (denying a motion to strike public records that could be discovered in the course of the court's own research). Nielsen further contends that the third witness from the DOC testified about the DOC policies.

Nielsen cites DOC policies 203.010 regarding case management, 201.020 regarding post-sentencing activities, 106.140 regarding evidentiary hearings, and 201.023 regarding intensive supervised release for the proposition that if Nielsen violates the terms of his supervised-release agreement, his release will be revoked under the proceedings of the DOC. Nielsen also contends that the district court "ignored" DOC policy 203.060 regarding the life-sentence review process. The policy provides that "[t]he commissioner of corrections has the sole authority for reviewing offenders serving life sentence who are eligible for release consideration."

Nielsen's materials comprise none of the 12 exhibits admitted into evidence. And Nielsen's witness's testimony was limited to generally stating that there are conditions

that must be met before a person is paroled and that he "did not review [the] last set of directives from the commissioner of the advisory panel before [Nielsen's] next review." Nielsen's use of the DOC policies constitutes a new argument about the efficacy of sex-offender treatment in prison and intensive supervised release as a less-restrictive treatment program. Although the DOC policies are publicly available, we decline to second guess the district court's well-grounded finding that Nielsen failed to prove the existence of a less-restrictive treatment program on the basis of materials that were not presented to the district court. We therefore grant the county's motion to strike. *See Stageberg*, 695 N.W.2d at 613.

## II.

Nielsen also argues that civil commitment should not displace the criminal law "as the normal tool for addressing antisocial behavior." Nielsen appears to contend that, as applied to him, Minnesota's civil-commitment statutes are unconstitutional because commitment will be retributive—since he will be released from prison only if he does not need treatment, commitment at that point will be for punishment and not for treatment.

Nielsen's argument fails. The supreme court has held that Minnesota's civil-commitment statutes are not retributive or deterrence-based, and that they therefore do not violate the constitutional bar against double jeopardy or ex post facto laws. *Linehan IV*, 594 N.W.2d at 871-72. The supreme court has also held that Minnesota's civil-commitment statutes are narrowly tailored in pursuit of a compelling government interest and therefore satisfy due process. *Id.* at 872-76. Nielsen's argument—based on his assertion that he will not need treatment if he is released—is yet another variation on the

9

argument he raised in his prior appeal that he could not be committed while serving his criminal sentence. *See Nielsen*, 863 N.W.2d at 401-02. There, we held that Nielsen can be civilly committed at the same time that he is serving his criminal sentence. *Id.* at 402.

**III.**

Nielsen's final contention is that, because the treatment aspects of the MSOP have been found defective and unconstitutional, commitment deprives him of his right to treatment.

Nielsen acknowledges that the right-to-treatment issue is generally not ripe for review on appeal from an initial commitment order. *See In re Civil Commitment of Travis*, 767 N.W.2d 52, 58 (Minn. App. 2009) (summarizing caselaw establishing that right-to-treatment arguments are premature at the time of a commitment proceeding). Nielsen contends, however, that the federal district court's decision in *Karsjens v. Jesson*, 109 F. Supp. 3d 1139 (D. Minn. 2015), *motion to certify appeal denied*, Civ. No. 11-3659, 2015 WL 4478972 (D. Minn. July 22, 2015), "revived the inadequate and right-to-treatment claims."

*Karsjens* did not abrogate the rule that a right-to-treatment challenge is premature on appeal from a commitment order. *Karsjens* held "that Minnesota's civil commitment statutory scheme is unconstitutional both on its face and as applied." 109 F. Supp. 3d at 1173. *Karsjens* did not, however, conclude that Minnesota's initial commitment process was unconstitutional. *See id*. The *Karsjens* opinion focused almost entirely on matters that occur following commitment, such as a lack of periodic risk assessments or a judicial bypass mechanism, discharge requirements that are more stringent than commitment

standards, placing the burden of proving that a termination in custody is supported on the patient, and relieving the state of any duty to assess whether a patient needs continued commitment. *Id.* at 1168-69, 1173. Moreover, *Karsjens* is not a final decision that entitles Nielsen to relief. *See In re Commitment of Hand*, 878 N.W.2d 503, 508 (Minn. App. 2016) (stating that *Karsjens* is not a final judgment), *review denied* (Minn. June 21, 2016); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties.").

Furthermore, *Karsjens* is not binding on this court. On issues of interpretation of the federal constitution, this court is bound by the Unites States Supreme Court and the Minnesota Supreme Court, not by the federal district court. *See State v. Brist*, 812 N.W.2d 51, 54 (Minn. 2012) (stating that the Minnesota Supreme Court is bound by United States Supreme Court "precedent on matters of federal law"); *State v. Allinder*, 746 N.W.2d 923, 925 (Minn. App. 2008) (stating that this court is bound by Minnesota Supreme Court precedent). Binding precedent states that Minnesota's civil-commitment statutes are not unconstitutional. *See Linehan IV*, 594 N.W.2d at 871-72, 878. It is the role of the court of appeals to apply current law. *See Lake George Park, L.L.C. v. IBM Mid-Am. Emps. Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn. App. 1998) ("This court, as an error correcting court, is without authority to change the law."), *review denied* (Minn. June 17, 1998). Consequently, Nielsen's right-to-treatment argument fails.

**Affirmed; motion granted.**

11