Portrice WILLIAMS, Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A07–2447.

Court of Appeals of Minnesota.

Jan. 27, 2009.

Lori Swanson, Attorney General, St. Paul, MN, and Michael O. Freeman, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, James R. Peterson, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; KLAPHAKE, Judge; and WORKE, Judge.

## O P I N I O N

LANSING, Judge.

Portrice Williams appeals from the denial of her postconviction petition for plea withdrawal and her alternative request for sentence modification. Because the postconviction court properly concluded that Williams's *Norgaard* plea was accurate, voluntary, and intelligent and because sentence modification is unwarranted, we affirm.

### FACTS

The state charged Portrice Williams in May 2002 with second-degree assault and terroristic threats. The complaint alleged that on June 30, 2001 Williams engaged in a physical struggle with another woman, MR, in a parking lot, got into her truck,

and "drove at [MR] multiple times" while yelling "I will kill you." MR's husband grabbed MR and pushed her into the bushes so she would not be hit, and MR "ultimately hid behind a large steel theater sign for protection." The complaint also stated that three witnesses provided similar accounts of the event.

The state offered Williams a plea bargain. If Williams was willing to plead guilty to the assault charge, the state would agree to dismiss the terroristic-threats charge and recommend that the district court grant a downward dispositional departure by staying the imposition of the presumptive twenty-one month commitment and requiring Williams to serve 180 days in the workhouse as part of a three-year probationary term. Williams rejected the state's offer because she was reluctant to serve time in the workhouse. She decided instead to enter a *Norgaard* plea to both the assault charge and the terroristic-threats charge. She signed a plea petition and entered her plea at a hearing in February 2003.

Before sentencing, Williams moved for a downward dispositional departure. She asked the district court to sentence the felony convictions for assault and terroristic threats as gross misdemeanors and not to impose any workhouse time. The district court denied Williams's motion in April 2003. It imposed concurrent sentences of twenty one months for the two convictions, but it granted a downward dispositional departure by staying the execution of the sentences and imposing five years of probation. As a condition of probation, the district court required Williams to spend ninety days in the workhouse.

Williams filed a petition to withdraw her guilty plea in April 2007 and asked for an evidentiary hearing. She requested in the alternative that her sentence be modified from a stay of execution to a stay of imposition. In an affidavit in support of her petition, she stated that the felony convictions had made it difficult for her to find a job and had "a devastating impact on [her] life." The postconviction court summarily denied Williams's request for plea withdrawal in November 2007 on two grounds—that the request was untimely and that the plea was valid and did not result in a manifest injustice. Williams appeals from the denial of her plea-withdrawal petition and her alternative request for sentence modification.

## ISSUES

I. Did the postconviction court abuse its discretion when it denied Williams's petition for plea withdrawal?

II. Did the postconviction court abuse its discretion when it denied Williams's sentence-modification request?

## ANALYSIS

### I

Once a guilty plea has been entered, a defendant does not have an absolute right to withdraw it. *State v. Theis,* 742 N.W.2d 643, 646 (Minn.2007). After conviction and sentencing, a defendant may withdraw a guilty plea if two conditions are met: withdrawal is "necessary to correct a manifest injustice" and the defendant makes a timely motion for withdrawal. Minn. R.Crim. P. 15.05, subd. 1; *Theis,* 742 N.W.2d at 646. Manifest injustice exists when a guilty plea is invalid. *Theis,* 742 N.W.2d at 646. A guilty plea is valid only if it is accurate, voluntary, and intelligent. *Id.* We review decisions of a postconviction court for abuse of discretion. *Hale v. State,* 566 N.W.2d 923, 926 (Minn.1997). We will sustain the postconviction court's findings if they are supported by sufficient evidence in the record. *Cuypers v. State,* 711 N.W.2d 100, 103

(Minn.2006). We review legal issues de novo. *Id.*

Williams argues that she meets both of the conditions for withdrawing her guilty plea. First, she contends that withdrawal of her plea is necessary to correct a manifest injustice because her plea was not accurate, voluntary, or intelligent. *See Theis,* 742 N.W.2d at 646 (stating plea-validity requirements). And, second, she argues that she made a timely motion for withdrawal. We conclude that the record and the law support the postconviction court's determination that Williams's plea was accurate, voluntary, and intelligent. It is, therefore, unnecessary to reach the issue of whether the plea-withdrawal motion was untimely. We separately address the accuracy, voluntariness, and intelligence requirements.

The accuracy requirement is intended to protect "the defendant from pleading guilty to a charge more serious than he or she could be convicted of were the defendant to go to trial." *State v. Ecker,* 524 N.W.2d 712, 716 (Minn.1994). Thus, "[a] proper factual basis must be established for a guilty plea to be accurate." *Id.*

Ordinarily, an adequate factual basis is "established by questioning the defendant and asking the defendant to explain in his or her own words the circumstances surrounding the crime." *Id.* But in two circumstances a factual basis must be established by other means: when a defendant enters an *Alford/Goulette* plea and when a defendant enters a *Norgaard* plea. *Id.* at 716–17. A plea constitutes an *Alford/Goulette* plea if the defendant maintains innocence but pleads guilty because the record establishes, and the defendant reasonably believes, that the state has sufficient evidence to obtain a conviction. *Id.* at 716 (citing *North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27

L.Ed.2d 162 (1970)); *see also State v. Goulette,* 258 N.W.2d 758, 761 (Minn.1977) (adopting *Alford* rationale). A plea constitutes a *Norgaard* plea if the defendant asserts an absence of memory on the essential elements of the offense but pleads guilty because the record establishes, and the defendant reasonably believes, that the state has sufficient evidence to obtain a conviction. *Ecker,* 524 N.W.2d at 716–17 (citing *State ex rel. Norgaard v. Tahash,* 261 Minn. 106, 111–12, 110 N.W.2d 867, 871 (1961)). When a defendant enters an *Alford/Goulette* plea or a *Norgaard* plea, it is particularly important that a factual basis for the plea be established. *Ecker,* 524 N.W.2d at 716–17. This is because in both cases the plea "is not supported by the defendant's admission of guilt." *Theis,* 742 N.W.2d at 649. And, in the case of an *Alford/Goulette* plea, the plea is contradicted by the defendant's claim of innocence. *Id.*

Although the Minnesota Supreme Court has not definitively stated what is required, as opposed to recommended, to establish an adequate factual basis for a *Norgaard* plea, two cases provide guidance on this issue: *State v. Ecker,* 524 N.W.2d 712, and *State v. Theis,* 742 N.W.2d 643. In *Ecker,* the supreme court suggested that a factual basis for a *Norgaard* plea is sufficiently established when the record clearly shows that in all likelihood the defendant committed the offense and that the defendant pleaded guilty based on the likelihood that a jury would convict. 524 N.W.2d at 717 (examining validity of *Norgaard* plea but suggesting that same standard applies to *Alford/Goulette* pleas). In *Theis,* the more recent opinion, the supreme court examined the validity of an *Alford/Goulette* plea but relied largely on *Ecker.* 742 N.W.2d at 648–49. *Theis* clarified that an adequate factual basis consists of two related components: a strong

factual basis and the defendant's acknowledgement that the evidence would be sufficient for a jury to find the defendant guilty beyond a reasonable doubt. *Id.* "The strong factual basis and the defendant's agreement that the evidence is sufficient to support his conviction provide the court with a basis to independently conclude that there is a *strong* probability that the defendant would be found guilty of the charge to which he pleaded guilty." *Id.*

The supreme court did not set forth a new rule in *Theis;* rather it restated and clarified earlier precedent. *Id.* at 649. Because *Theis* did not set forth any new requirements, it is unnecessary to determine whether the supreme court intended for the opinion to apply to *Norgaard* pleas as well as *Alford/Goulette* pleas. The *Theis* opinion, however, is relevant to *Norgaard* pleas because it clarifies the two factual-basis components that are discussed in *Ecker. See Theis,* 742 N.W.2d at 649 (emphasizing strong factual basis and defendant's agreement that evidence is sufficient for conviction); *Ecker,* 524 N.W.2d at 717 (noting record showed that defendant believed jury would convict him and that he, in all likelihood, committed crime).

 Applying this caselaw to Williams's request for plea withdrawal, we conclude that Williams's *Norgaard* plea met the accuracy requirements. Williams was convicted of second-degree assault and terroristic threats. A person commits second-degree assault when she uses a dangerous weapon with the "intent to cause fear in another of immediate bodily harm or death; or . . . intentional[ly] inflict[s] or attempt[s] to inflict bodily harm upon another." Minn.Stat. §§ 609.222, subd. 1 (defining second-degree assault with dangerous weapon), .02, subds. 6, 10 (2000) (defining "dangerous weapon" and "assault"). A person commits terroristic threats when she "threatens, directly or indirectly, to commit any crime of violence with purpose to terrorize another" or recklessly disregards "the risk of causing such terror." Minn.Stat. § 609.713, subd. 1 (2000).

The record demonstrates a strong factual basis for the plea. Williams herself established some of the key facts. Although she could not remember all the facts because of her alcohol consumption before committing the acts, she admitted driving her truck toward MR. The prosecutor asked her, "Did you, with the motor vehicle, drive at [MR] multiple times?" She answered, "I went toward[ ] her" and then added that she did so "because I [saw] her taking my glasses and my possessions, and I wanted to get them so I went toward her." Williams's recollections did not indicate any intent to cause fear, attempt to inflict bodily harm on MR, or threat to commit a crime of violence. But the sworn complaint, which was part of the record at the time of the plea and referred to at the plea hearing, summarizes witness testimony that showed, in all likelihood, that Williams committed both crimes. *See State v. Trott,* 338 N.W.2d 248, 251–52 (Minn.1983) (noting that defendant's guilty plea effectively admits allegations in complaint). The complaint documented that MR said Williams tried to hit her with the vehicle while yelling "I will kill you"; that an eyewitness, JN, who lived near the site of the incident, saw the driver of the truck go "over the curb" and try "to run over the woman" while the woman was yelling "she's trying to kill me"; that a second witness, MB, who also lived near the site, saw a truck try "many times to run the couple over"; and that a third witness, RL, stepped outside his home when he heard screaming and saw a woman hiding behind a sign and yelling, "She's trying to run me over, help, call the police." These state-

ments, when combined with Williams's partial recollections, provided a strong factual basis for the plea.

The record also establishes that Williams acknowledged the evidence would be sufficient for a jury to find her guilty of both charges. Williams was questioned directly on this issue:

> Q. ... [I]f the jury or the [c]ourt were to look at the police reports in this case, take a look at the witness statements, were to hear the witnesses testify in this case ... and the police testify in this case ... would it be fair to say that there is a substantial likelihood that you would be found guilty of both second degree assault with your car, because you're accused of attempting to run at least the woman over, as well as terroristic threats in certain things that you said, as far as threatening harm to either the woman and the man, is that correct?
>
> A. That's correct. That's what the jury would say because of what the witnesses—how they would view—how they viewed the thing that night.
>
> Q. Right. Not just what the jury would say, but what you're saying is there is a substantial likelihood that [you would] be found guilty of both counts, is that correct?
>
> A. Correct.

Williams also testified that she knew the state would be required to prove her guilt beyond a reasonable doubt at trial. Thus, the transcript from the plea hearing demonstrates, as required by *Ecker*, that Williams pleaded guilty based on probable guilt and on her awareness of the likelihood a jury would convict her. 524 N.W.2d at 717.

Because of the strong factual basis for Williams's plea and her acknowledgement on the record that the evidence would be sufficient for a jury to find her guilty

beyond a reasonable doubt, the postconviction court properly concluded that her plea was accurate under the *Ecker* standard.

 The record also establishes that Williams's plea was voluntary. "The voluntariness requirement insures that a guilty plea is not entered because of any improper pressures or inducements." *James v. State*, 699 N.W.2d 723, 728 (Minn.2005) (quotation omitted). Williams argues that she is at least entitled to a hearing on the issue of whether her plea was voluntary because her affidavit in support of her plea-withdrawal petition stated that a combination of conditions led her to plead guilty involuntarily: specifically, she alleged that she was depressed and under duress when she pleaded, that she was ill-informed by her attorney, and that she had a very short time to decide whether to plead guilty. *See* Minn.Stat. § 590.04, subd. 1 (2006) (stating that postconviction court must hold evidentiary hearing on issues raised in petition "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief"). But a defendant is not entitled to an evidentiary hearing if her allegations lack factual support and are directly refuted by her own testimony in the record. *See Stutelberg v. State*, 741 N.W.2d 867, 872 (Minn.2007) (noting that petitioner's allegations must be more than argumentative assertions without factual support); *State v. Irestone*, 283 Minn. 513, 514, 166 N.W.2d 345, 346 (1969) (noting that unsupported allegations that are refuted by record are mere "argumentative assertions").

Williams did not submit any factual support for her allegations, and her plea petition acknowledges that she had sufficient time to discuss the case with her attorney, that she had not been treated for any nervous or mental conditions, that she was

satisfied her attorney represented her interests and fully advised her, and that no one had made any promises to her or threatened her in order to obtain the guilty plea. Thus, the postconviction court did not err in summarily rejecting Williams's claim that her plea was involuntary.

 Finally, we address the intelligence requirement. A plea is intelligently made if the defendant understands the charges, understands the rights that are waived by pleading guilty, and understands the consequences of the plea. *State v. Farnsworth,* 738 N.W.2d 364, 372 (Minn. 2007). Williams asserts that she is entitled to an evidentiary hearing on the issue of whether her plea was intelligent because she stated in her postconviction affidavit that the Aleve pain medication she was taking at the time of the plea hearing "distorted" her mental focus and "clogged" her thinking. She also contends that her attorney failed to fully advise her about her case and that she did not understand the charges against her. But Williams testified at her plea hearing that her judgment was not affected by the Aleve pain medication she was taking, and she acknowledged in her plea petition that she understood the charges against her. Because Williams did not submit any factual support for her allegations and her allegations are directly refuted by her own testimony in the record, the postconviction court did not err when it summarily rejected her claim that her plea was not intelligently made.

In summary, the postconviction court properly concluded that Williams's plea was accurate, voluntary, and intelligent and that withdrawal of the plea is therefore not necessary to correct a manifest injustice. Williams's petition for plea withdrawal was properly denied.

## II

 In the alternative, Williams argues that the district court erred when it denied her request for a sentence modification. In her postconviction petition, Williams requested a stay of imposition of her sentence. At sentencing, the district court stayed the execution, but not the imposition, of Williams's sentence by granting a downward dispositional departure: Williams was sentenced to five years' probation with a condition of ninety days in the workhouse, on convictions for which the presumptive sentences were concurrent prison terms of twenty-one months. The district court could have stayed the imposition of the sentence, but it did not. *See* Minn. Sent. Guidelines cmt. III.A.101 (stating that "[t]he use of either a stay of imposition or stay of execution is at the discretion of the judge"); *see also* 9 Henry W. McCarr & Jack S. Nordby, *Minnesota Practice* § 36.3, at 69 (3d ed. 2001) (explaining differences between stays of execution and stays of imposition). If the imposition of Williams's sentence had been stayed, her felony conviction could ultimately be deemed a misdemeanor conviction. *See* Minn.Stat. § 609.13 (2000) (stating that felony conviction "is deemed to be for a misdemeanor if the imposition of the prison sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a prison sentence").

Williams does not cite any statutory law or caselaw demonstrating that a postconviction court has authority to convert a stay of execution to a stay of imposition. But, whether or not a postconviction court has authority to impose a stay of imposition in place of a stay of execution, we conclude that the facts in Williams's case do not warrant a modification. Williams asserts that the imposition of her sentence should be stayed for two reasons: she had no prior convictions at the time she was sentenced and she "performed extremely

well" during her probationary term. The record supports both of Williams's assertions. But Williams fails to establish that either of these factors—particularly her postsentencing conduct—requires a further modification than what she has already been granted. *Cf. State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981) (stating that "it would be a rare case which would warrant reversal of the refusal to depart"). The sentencing court granted the dispositional departure, in part, because Williams had "no prior juvenile offenses, no prior misdemeanor offenses, and no prior felony offenses." And, as the postconviction court noted, Williams's compliance with her probationary terms "merely shows that she has been following the terms of her sentence as required by the [c]ourt to avoid execution of the sentence." The postconviction court therefore did not abuse its discretion when it denied Williams's request for sentence modification.

## DECISION

The postconviction court did not abuse its discretion when it summarily denied William's petition for plea withdrawal. The plea was accurate because the record showed a strong factual basis for the plea, and Williams acknowledged that the evidence was sufficient to support her convictions; the plea was voluntary because the record conclusively showed that it was not entered because of any improper pressures or inducements; and the plea was intelligent because the record conclusively showed that she understood the charges, her rights, and the consequences of her plea. The postconviction court also properly concluded that the facts in this case do not warrant sentence modification.

**Affirmed.**