*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-0977**

State of Minnesota,
Respondent,

vs.

Thomas Joseph McManus,
Appellant.

**Filed November 24, 2014
Affirmed; motion granted
Reilly, Judge**

Chisago County District Court
File No. 13-CR-10-298

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janet Reiter, Chisago County Attorney, Beth A. Beaman, Assistant County Attorney, Center City, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Renée Bergeron, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reyes, Presiding Judge; Peterson, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**REILLY**, Judge

In this appeal, appellant argues that the district court erred in denying his petition to withdraw his guilty plea to one count of theft of a motor vehicle because the plea was

not voluntary, intelligent, or accurate and because the district court violated the parties' unqualified plea agreement. Appellant also moves to strike a portion of respondent's brief. We grant appellant's motion to strike and affirm the district court's order.

## FACTS

Shortly after midnight on March 15, 2010, White Bear Lake police officer Ryan George pulled over a 2001 Buick driven by McManus. Officer George ran the Buick's vehicle identification number and discovered that the Buick was stolen. After informing McManus and the Buick's passenger, McManus's grandson, that the Buick was stolen, the grandson told the officer that McManus has previously taken cars from dealerships to test drive and not returned them. He also told Officer George that he could not believe that his grandfather had "done this again." The state charged McManus with theft of a motor vehicle in violation of Minn. Stat. § 609.52, subds. 2(17), 3(3)(d)(v) (2008). On August 1, 2012, McManus pleaded guilty to one count of felony theft of a motor vehicle. The terms of the plea agreement were as follows: McManus's other charges in a different file would be dismissed, there would be a stay of execution, there would be no additional jail time, restitution would be ordered, and McManus would be subject to probation for up to five years. The district court scheduled a sentencing hearing for September 24, 2012. McManus did not appear at the hearing, and his counsel indicated that his absence was due to medical procedures.

Sentencing occurred on March 6, 2013. Due to McManus's failure to cooperate with the presentence investigation (PSI) and his four prior theft-related felony convictions, the state requested that the district court follow the PSI report's

2

recommendations and requested 60 days of local confinement. The district court sentenced McManus to 60 days in the Chisago County jail, 5 years of probation, and ordered restitution. McManus was 76 years old at the time he entered into the plea agreement.

On June 5, 2013, McManus filed a notice of appeal. We stayed his appeal pending postconviction proceedings. During the postconviction proceedings, the district court held an evidentiary hearing on McManus's motion seeking to withdraw his plea on February 5, 2014. The district court denied McManus's petition for postconviction relief on March 11, 2014, and this court dissolved the stay on April 22, 2014. This appeal follows.

**D E C I S I O N**

**I.**

When an appellant files a direct appeal that is stayed pending postconviction proceedings, we apply the standard of review for direct appeals. *Santiago v. State*, 644 N.W.2d 425, 439 (Minn. 2002). "A defendant bears the burden of showing his plea was invalid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). The validity of a plea is a question of law that we review de novo. *Id*. We defer to the postconviction court's credibility assessments. *Opsahl v. State*, 710 N.W.2d 776, 782 (Minn. 2006).

To withdraw a guilty plea after sentencing, a defendant must show the withdrawal is necessary to correct a manifest injustice. *Raleigh*, 778 N.W.2d at 93 (citing Minn. R. Crim. P. 15.05, subd. 1). A guilty plea is invalid and manifestly unjust if it is not voluntary, intelligent, and accurate. *Id.* at 94. If a guilty plea fails to meet any of these

3

three requirements, the plea is invalid. *State v. Theis*, 742 N.W.2d 643, 650 (Minn. 2007). McManus challenges the voluntariness, intelligence, and accuracy of his plea.

## A.    *Voluntariness*

McManus argues that his plea was not voluntary because he was ill and under the influence of medication at the time of the plea hearing. The voluntariness requirement of a valid guilty plea "insures that a guilty plea is not entered because of any improper pressures or inducements." *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000). To analyze the voluntariness requirement, "the court examines what the parties reasonably understood to be the terms of the plea agreement," *Raleigh*, 778 N.W.2d at 96, and considers all the relevant circumstances surrounding the plea. *State v. Danh*, 516 N.W.2d 539, 544 (Minn. 1994).

At the postconviction hearing, McManus testified that, during the sentencing hearing, he did not feel well and was experiencing "[a]nxiety and high level [of] chest pain during the proceedings." In its order denying relief, the district court noted that, although McManus claimed to suffer from health issues and was taking medication when he entered the plea, "he fail[ed] to offer any medical records, affidavits, correspondence from his treating physicians, or any other corroborating evidence besides" that of his sister's testimony. Moreover, the district court found that it had "the opportunity to observe [McManus] throughout both the plea hearing and sentencing [hearing] and notes that, based upon this Court's personal observations, [McManus's] testimony lacks any credibility whatsoever." At the end of the evidentiary hearing, the district court explained

[I]t's not very often you see a 76-year-old man with 17 felony convictions, including a conviction for habitual criminality. It just doesn't happen that often, and because of that these events stand out very clearly in my head. . . . And I want to be very clear on that. I do remember very distinctly Mr. McManus making that plea and he being completely coherent and clear and waiving his rights intelligently. So I want to add that to the record.

McManus claims that this finding is clearly erroneous because the record does not support it. Although, as McManus accurately notes, he only gave "yes" or "no" responses at the plea hearing, the district court's assessment is supported by other record evidence.

At the plea hearing, the following exchange took place between McManus and his attorney:

> [ATTORNEY]: Mr. McManus, I am showing you a document entitled a petition to enter a plea of guilty; do you recognize this?
> [MCMANUS]: Yes.
> [ATTORNEY]: You and I went over this line by line before we came into Court this afternoon?
> [MCMANUS]: Yes.
> [ATTORNEY]: Did you sign the back of the last page?
> [MCMANUS]: Yes.
> [ATTORNEY]: Did you do that to indicate you understood all of the rights?
> [MCMANUS]: Yes.
> [ATTORNEY]: You're willing to give up all those rights?
> [MCMANUS]: Yes.
> [ATTORNEY]: And you're willing to do that because in exchange for giving up your rights, you're being offered a plea agreement; and you want to take advantage of it?
> [MCMANUS]: That's right.
> [ATTORNEY]: Do you have any questions for either myself or the Judge at this time?
> [MCMANUS]: No.

In addition, the plea petition included a paragraph that listed the drugs McManus was currently taking—"blood pressure, heart, pain meds" and that he had not been treated for a nervous or mental condition. Lastly, at the sentencing hearing, McManus articulately described at length his assessment of the situation and his charge.

McManus also contends that he was under severe stress and anxiety at the time of the plea hearing and therefore was unable to understand the plea negotiations. The state relies on *Williams v. State*, 760 N.W.2d 8 (Minn. App. 2009), for the proposition that stress at the time of pleading and a limited period in which a defendant has to accept a plea do not provide the necessary factual support to invalidate a plea. We agree.

In *Williams*, the appellant entered a *Norgaard* plea to assault and terroristic-threats charges. 760 N.W.2d at 10. On appeal, appellant alleged that her plea was not voluntary because, at the time of the plea, she was depressed, under duress, ill-advised, and only had a short time to decide whether to accept the plea. *Id.* at 14. This court rejected the appellant's claim that her plea was involuntary because she did not submit any factual support for her allegations, and her plea petition acknowledged that she had not been treated for any nervous or mental conditions, that she was satisfied with her attorney, and no one had threatened her to enter a guilty plea. *Id.* at 14-15. Here, like in *Williams*, the plea petition shows that McManus indicated that he was not being treated for a nervous or mental condition, and his list of medications did not include anxiety medication.

Based on the record, we are satisfied that McManus understood the terms of the plea agreement and acknowledged that he pleaded guilty without threats or coercion. Accordingly, McManus's involuntary-plea argument is unavailing.

**B.** *Intelligence*

McManus argues that the intelligence requirement of the plea agreement was lacking because he had "very little" contact with his attorney prior to entering a plea in this case. The intelligence requirement ensures that a defendant understands the charges against him, the rights he is waiving, and the consequences of his plea. *State v. Farnsworth*, 738 N.W.2d 364, 372 (Minn. 2007). "'Consequences' refers to a plea's direct consequences, namely the maximum sentence and fine." *Raleigh*, 778 N.W.2d at 96.

McManus claims that the district court's finding that he fully understood the plea agreement is not supported by sufficient evidence because there is no proof in the record that his counsel discussed defenses, the guideline sentence, or the consequences of failing to complete the PSI. Although the specific consequences of failing to complete the PSI were not addressed on the record, McManus's attorney adequately counseled him on the plea agreement.

When asked about his plea petition process at the postconviction hearing, McManus's attorney stated:

> I sit down with [my clients]. I go through [the plea petition]. I start out by filling out the information that's required . . . . I think there's probably four or five questions on the plea petition that goes over whether they've been ill recently, whether they're taking medications, whether they've seen a psychiatrist, whether they've been treated for mental issues. So I always go through that. Then I go into their actual trial rights, and generally what I do is I'll say do you understand you have the right to have a trial? And then we go into whether they want it to be a jury trial, a court trial, how the trial would happen with jurors.

I talk about how the case—we always talk about what they would do to prove the case. In other words, we could call certain witnesses, we could cross-examine those witnesses. I explained what cross-examination is. I say that we could subpoena witnesses. We go through if there's any evidence in the case, and that probably would have been done before I went through the plea petition. I would ask the client what he would have for witnesses, if there are any. And then if they understand all those rights, I think those are numbers—I can't remember in the plea petition, but there's like seven or eight of them in a row. And then, you know, we talk about the things that you would have to do after you plea, you know, in terms of the PSI.

The plea petition specified that McManus agreed that he had sufficient time to discuss the case with his attorney, that his attorney discussed possible defenses with him, that his attorney had fully advised him, and what maximum penalty could be imposed for the crime. Most importantly, the petition further provided that if McManus did "not cooperate with the Pre-Sentence Investigation . . . the plea agreement, including any agreement or cap on time to serve will be null and void and my plea will be considered a straight plea and I understand I may be sentenced accordingly." McManus signed the petition and told the district court that he went over the petition line-by-line with his attorney and understood all the rights that he was giving up. The record shows that McManus was informed of the consequences for not cooperating with the PSI. Therefore, McManus's plea was intelligent.

## C. *Accuracy*

The accuracy requirement protects defendants from pleading guilty to crimes that are more serious than the crimes they could be convicted of at trial. *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012). "A proper factual basis must be established for a guilty

plea to be accurate." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). A plea's factual basis is adequate if there are "sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003). The factual basis of a plea, however, becomes "inadequate when the defendant makes statements that negate an essential element of the charged crime because such statements are inconsistent with a plea of guilty." *Id.* at 350.

McManus challenges the accuracy of his plea, claiming that the factual basis for the plea was improperly established through the use of leading questions. Typically, the district court can satisfy the accuracy requirement "by asking the defendant to express in his own words what happened." *Lussier*, 821 N.W.2d at 589. The supreme court, however, has cautioned against the exclusive use of leading questions to establish the factual basis for the plea. *Id.*; *see, e.g.*, *Ecker*, 524 N.W.2d at 716 ("The trial judge must be particularly attentive to situations in which a defendant is pleading guilty and is asked only leading questions by counsel."). But the failure of the district court to "elicit proper responses" does not require plea withdrawal if the record "contains sufficient evidence to support the conviction." *Raleigh*, 778 N.W.2d at 94. In determining whether the record contains sufficient evidence, this court may consider the plea petition, the plea colloquy, and any other evidence in the record. *See Lussier*, 821 N.W.2d at 588-89.

To prove a charge of motor-vehicle theft, the state must show that the defendant (1) took or drove a motor vehicle, (2) without the consent of the owner, (3) knowing or having reason to know that the owner did not give consent. Minn. Stat. § 609.52, subd.

9

2(a)(17) (2010). The record confirms the prosecutor established the factual basis with leading questions. Although the factual basis was established using a "disfavored format," the testimony and complaint establish the elements of motor-vehicle theft. *See Raleigh*, 778 N.W.2d at 96-97.

The complaint stated that on March 15, 2010, a police officer pulled over a 2001 Buick. A car dealership in Chisago County had previously reported this vehicle stolen. During the plea hearing, McManus admitted to being in possession of the Buick on March 15 without the authority or consent from the dealership. Finally, McManus does not argue that the plea failed to establish an element of the crime but only challenges the format of the plea. Because the record establishes a sufficient factual basis to support the conviction, withdrawal is not warranted on this ground.

## II.

McManus contends that he has the right to withdraw his plea agreement because the district court's 60-day jail sentence violated the parties' unqualified promise. Generally, after a court accepts a plea containing an agreement on sentencing, the terms of the agreement should be fulfilled. *State v. Pearson*, 479 N.W.2d 401, 405 (Minn. App. 1991), *review denied* (Minn. Feb. 10, 1992). If a "a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Brown*, 606 N.W.2d at 674.

A court, however, is not required to honor a plea agreement that has been breached. *State v. Rud*, 372 N.W.2d 434, 435 (Minn. App. 1985). Further, a defendant

who breaches a plea agreement after being warned that such a breach would result in a longer sentence is not entitled to specific performance. *Id.* (affirming sentence exceeding sentence provided for in plea agreement when defendant violated plea agreement and had been warned that violation would result in execution of sentence), *review denied* (Minn. Sept. 26, 1985). If an inducement in a plea agreement is not honored, the guilty plea may be withdrawn. *State v. Garcia*, 582 N.W.2d 879, 882 (Minn. 1998). "In determining whether a plea agreement was violated, courts look to what the parties to the plea bargain reasonably understood to be the terms of the agreement." *Brown*, 606 N.W.2d at 674 (quotations omitted). Issues involving the interpretation and enforcement of plea agreements are issues of law that we review de novo. *Id.*

At the plea hearing, counsel for McManus told the district court that, "The agreement would be that there would be no further executed jail to be served. So my client at sentencing would receive credit for whatever time it is, and that would be the end of the actual jail time to serve." But, the plea petition language contradicts McManus's claim that this was an unqualified promise. The plea petition provided:

> I have been told by my attorney and understand:
>
> . . .
>
> b. If I, defendant, *do not cooperate with the Pre-Sentence Investigation*, Chemical Use Assessment, Domestic Violence Inventory; if I fail to remain law abiding or if I fail to timely appear for the scheduled Sentencing Hearing, the plea agreement, *including any agreement or cap on time to serve will be null and void and my plea will be considered a straight plea and I understand I may be sentenced accordingly*.

11

(Emphasis added.)  In addition, the district court engaged in the following colloquy with McManus:

> [COURT]: I'll also find that you admitted sufficient facts to support the plea but I am going to hold acceptance of the plea and order a presentence investigation and have you back. You need to cooperate fully with this, Mr. McManus, we need to have that investigation in hand prior to your sentencing.  So make sure when the Department of Corrections contacts you, that you respond.  All right.
> [MCMANUS]: Yes.

The record silences McManus's argument that no additional jail time was an unqualified promise.  The record shows that the district court's acceptance of the plea agreement was contingent on McManus's cooperation during the PSI and sentencing. Not only did McManus not complete the PSI, but he failed to appear at the initial sentencing hearing.  At the rescheduled sentencing hearing, counsel for McManus did not argue that the imposition of 60 days in jail violated the plea agreement; rather, he argued for reduced jail time due to McManus's age and health issues.  Here, it is clear that McManus was required under the plea agreement to cooperate with the PSI and appear at sentencing.

McManus also claims that he was not "adequately warned of the consequences of not complet[ing] the PSI."  At the postconviction hearing, McManus's district court counsel testified that he discussed with McManus before the plea the "things that [he] would have to do after the plea, you know, in terms of the PSI."  Likewise, the district court told McManus that the plea would not be accepted unless he fully cooperated with

12

the PSI.[1]  Thus, these colloquies coupled with the plea petition provided proper notice regarding McManus's required cooperation with the PSI.  *See Oldenburg v. State*, 763 N.W.2d 655, 659 (Minn. App. 2009) (holding that appellant had adequate notice of plea requirements when it was set forth in the plea petition but not discussed at the plea or sentencing hearings).  Accordingly, we conclude that withdrawal of McManus's guilty plea is not required.

### III.

McManus moved to strike a portion of the state's brief, claiming the portion is not supported by facts in the record.  "The papers filed in the trial court, the exhibits, and the transcript of the proceedings, if any, shall constitute the record on appeal in all cases." Minn. R. Civ. App. P. 110.01.  And "[e]ach statement of a material fact shall be accompanied by a reference to the record."  Minn. R. Civ. App. P. 128.02, subd. 1(c). The general rule is that an appellate court may not base its decision on matters outside the record on appeal, *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988), and we "will strike references to such matters from the parties' briefs," *Stageberg v. Stageberg*, 695 N.W.2d 609, 613 (Minn. App. 2005), *review denied* (Minn. July 19, 2005).

An independent review of the record supports McManus's contention that these statements concern extra-record material.  The record shows that neither McManus's counsel nor the state's prosecuting attorney testified at any of the hearings about the

---

[1] At the sentencing hearing, the district court implicitly accepted McManus's guilty plea and entered judgment of conviction based upon McManus's admissions at the plea hearing.

13

hospital stay referenced in the state's brief. Because these statements are outside the record, they are stricken from the state's brief.

**Affirmed; motion granted.**