*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1551**

State of Minnesota,
Respondent,

vs.

Scotty William Polchow,
Appellant.

**Filed July 18, 2016
Affirmed
Hooten, Judge**

Aitkin County District Court
File No. 01-CR-13-1083

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James P. Ratz, Aitkin County Attorney, Nathan T. Benusa, Stephanie Shook, Assistant County Attorneys, Aitkin, Minnesota (for respondent)

Charles F. Clippert, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Jesson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HOOTEN**, Judge

On appeal from his conviction of aiding and abetting first-degree assault, appellant argues that he must be permitted to withdraw his guilty plea because his plea was not supported by an adequate factual basis. We affirm.

## FACTS

Over a several week period in October 2013, a group of individuals, including appellant Scotty William Polchow, tortured a disabled man, B.J.B.[1] Among other injuries, B.J.B. suffered a broken jaw as a result of one of the multiple assaults he endured. B.J.B.'s broken jaw went untreated for three to four days. After receiving treatment at a local hospital, B.J.B. was transported to a hospital in Minneapolis in order to repair his broken jaw. Police received information that B.J.B would remain hospitalized for at least two weeks. A friend of B.J.B.'s who had visited him in the hospital told police that plates were required to repair B.J.B's jaw and that one side of his jaw was very infected.

Polchow was charged with four counts of aiding and abetting kidnapping, one count of aiding and abetting second-degree criminal sexual conduct, and two counts of aiding and abetting first-degree assault. Polchow and the state entered into a plea agreement, with Polchow agreeing to plead guilty to one count of aiding and abetting kidnapping and one count of aiding and abetting first-degree assault in exchange for the dismissal of the other five charges. With regard to the aiding and abetting first-degree assault charge, Polchow admitted at the plea hearing that he aided and abetted an assault that resulted in B.J.B. sustaining a broken jaw by filming the incident and cheering the assailants on. The district court accepted Polchow's plea and ultimately sentenced him to consecutive sentences of 57 months for the aiding and abetting kidnapping charge and 103 months for the aiding

---

[1] The facts are taken from the November 27, 2013 amended complaint.

and abetting first-degree assault charge. Polchow appeals his conviction of aiding and abetting first-degree assault.

## DECISION

"A defendant who wishes to overturn a guilty plea may file a petition for postconviction relief . . . , move to withdraw the plea under [r]ule 15.05 of the Minnesota Rules of Criminal Procedure, or seek withdrawal on a direct appeal from the judgment of conviction." *State v. Miller*, 849 N.W.2d 94, 97 (Minn. App. 2014). A defendant must be permitted to withdraw his or her guilty plea at any time if "withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is not valid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). To be valid, "a guilty plea must be accurate, voluntary, and intelligent." *Id.* A defendant bears the burden of establishing that his or her plea was invalid. *Lussier v. State*, 821 N.W.2d 581, 588 (Minn. 2012) (*Lussier I*). The validity of a guilty plea is a question of law, which we review de novo. *Id.*

Polchow challenges the accuracy of his aiding and abetting first-degree assault plea. A plea is accurate if it is established by an adequate factual basis. *Id.* "When determining whether a guilty plea has an adequate factual basis, [appellate courts] examine whether there are sufficient facts *on the record* to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *Lussier v. State*, 853 N.W.2d 149, 154 (Minn. 2014) (quotation omitted) (*Lussier II*). The factual basis is ordinarily established "by asking the defendant to express in his own words what happened." *Barrow v. State*, 862 N.W.2d 686, 691 (Minn. 2015); *see also* Minn. R. Crim. P. 15.02, subd. 2

3

("After explaining the defendant's rights, the judge, with the assistance of counsel, must question the defendant to determine a factual basis for all elements of the offense to which the defendant is pleading guilty."). However, "even if a district court does not elicit proper responses, a defendant may not withdraw his plea if the record contains sufficient evidence to support the conviction." *Lussier I*, 821 N.W.2d at 589 (quotations omitted).

When reviewing the adequacy of the factual basis of a plea, Minnesota appellate courts have looked to the complaint to supplement the defendant's admissions. *See, e.g.*, *State v. Trott*, 338 N.W.2d 248, 252 (Minn. 1983) ("The record also contains a copy of the complaint and defendant, by his plea of guilty, in effect judicially admitted the allegations contained in the complaint."); *Williams v. State*, 760 N.W.2d 8, 13 (Minn. App. 2009) ("[T]he sworn complaint, which was part of the record at the time of the plea and referred to at the plea hearing, summarizes witness testimony that showed, in all likelihood, that [defendant] committed both crimes."), *review denied* (Minn. Apr. 21, 2009). In order for there to be an adequate factual basis for a plea, there need be only sufficient facts from which the defendant's guilt can be "reasonably inferred." *State v. Neumann*, 262 N.W.2d 426, 430 (Minn. 1978), *overruled on other grounds by State v. Moore*, 481 N.W.2d 355 (Minn. 1992).

First-degree assault occurs when a person "assaults another and inflicts great bodily harm." Minn. Stat. § 609.221, subd. 1 (2012). An assault is "the intentional infliction of or attempt to inflict bodily harm upon another." Minn. Stat. § 609.02, subd. 10 (2012). "'Great bodily harm' means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted

4

loss or impairment of the function of any bodily member or organ or other serious bodily harm." *Id.*, subd. 8 (2012). "[T]he phrase 'other serious bodily harm' should be taken in the context of the other three alternative definitions." *State v. Moore*, 699 N.W.2d 733, 739 (Minn. 2005). A person aids or abets the crime of another "if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1 (2012).

Polchow argues that the factual basis for his guilty plea to aiding and abetting first-degree assault is inadequate because he only admitted to aiding and abetting an assault that resulted in B.J.B. suffering a broken jaw and that a broken jaw does not constitute "great bodily harm." The following colloquy took place at Polchow's plea hearing:

> PROSECUTOR: . . . Mr. Polchow, were you staying [at] or visiting a residence here in Aitkin County . . . ?
> POLCHOW: Yes.
> . . . .
> PROSECUTOR: . . . And was there a person by the name of [B.J.B.] that was also—
> POLCHOW: And [B.J.B.], yes, [B.J.B.].
> PROSECUTOR: —staying there? And you've had an opportunity to watch a videotape?
> POLCHOW: Yes.
> PROSECUTOR: And that videotape was actually created on October 25th of 2013?
> POLCHOW: Yes.
> PROSECUTOR: And you created that videotape?
> POLCHOW: Yes.
> PROSECUTOR: Okay. And it was done on your, on your cellular telephone?
> POLCHOW: Uh, yes.
> PROSECUTOR: And during the tape and what was going on, um, what happened to [B.J.B.] on the video?
> POLCHOW: He got beaten up. He got hit in the face. He got thrown to the ground. He got burned—

PROSECUTOR: And do you believe that as a result—and you were present during that?

POLCHOW: Um, yes, I was there.

PROSECUTOR: And you were filming it?

POLCHOW: Yep.

PROSECUTOR: And you were, um, cheering them on?

POLCHOW: Yeah.

PROSECUTOR: And, um, you would agree—and you knew what they were doing?

POLCHOW: Yep.

PROSECUTOR: And you understand that essentially you were helping and assisting them because your presence [sic] and the fact that you knew that they were doing that?

POLCHOW: Yeah.

PROSECUTOR: And [B.J.B.] didn't get any medical attention after that?

POLCHOW: Uh, no.

PROSECUTOR: And you would agree that [B.J.B.] suffered a broken jaw at that point?

POLCHOW: Yep.

PROSECUTOR: And that you would agree that the broken jaw is classified as what's called great bodily harm?

POLCHOW: Yes.

PROSECUTOR: And have you had discussions with [defense counsel] about that?

POLCHOW: Yep.

In this colloquy, Polchow acknowledged that he aided and abetted in the assault of B.J.B by videotaping and cheering on the assault. The colloquy also establishes that B.J.B. suffered a broken jaw as a result of the assault and that he did not receive medical treatment. Moreover, Polchow agreed that the broken jaw that B.J.B. suffered constitutes great bodily harm and that he had spoken with his attorney about that.

Polchow contends that the record does not support his plea because he only admitted to participating in the assault that led to B.J.B sustaining a broken jaw and there is insufficient evidence in the record to show that B.J.B.'s broken jaw constituted great bodily harm. "If the record contains a showing that there is credible evidence available which

6

would support a jury verdict that defendant is guilty of at least as great a crime as that to which he pled guilty, then the factual basis for the guilty plea is adequate." *Lussier II*, 853 N.W.2d at 154 (alteration omitted) (emphasis omitted) (quotation omitted). When determining whether the victim suffered great bodily harm, a court must "focus on the injury to the victim rather than the actions of the assailant." *State v. Gerald*, 486 N.W.2d 799, 802 (Minn. App. 1992). This court must consider the totality of the victim's injuries when determining whether the injuries constitute other serious bodily harm. *State v. Dye*, 871 N.W.2d 916, 922 (Minn. App. 2015).

With regard to B.J.B.'s broken jaw, the amended complaint states that his jaw was broken on both sides, one side of his jaw was shattered, plates were required on both sides of his jaw to repair it, one side of his jaw was very infected, he was transferred from a hospital in greater Minnesota to a hospital in Minneapolis in order to receive treatment for his broken jaw, and he was expected to remain hospitalized for at least two weeks. The state does not argue that B.J.B.'s broken jaw "create[d] a high probability of death," and there is no evidence in the record regarding whether the injury to B.J.B.'s jaw resulted in "serious permanent disfigurement" or "protracted loss or impairment of the function of" his jaw. We conclude, however, that a jury could reasonably infer from the facts in the record that B.J.B.'s broken jaw and the other injuries he suffered constituted "other serious bodily injury." The amended complaint contains Polchow's admissions during an interview with a peace officer that he burned B.J.B. with a glass pipe, that he used a can of Axe body spray to burn B.J.B.'s back, that he whipped B.J.B. with a rope and a power cord, that "he was forced to kick and punch B.J.B." during the assault where B.J.B's jaw

7

was broken, and that he was present during other assaults on B.J.B. The amended complaint also states that B.J.B.'s injuries included, in addition to his broken jaw, multiple burns, contusions, and third-degree burns to his back. And, Polchow admitted at the plea hearing that when he was filming the assault where B.J.B. suffered a broken jaw, B.J.B. was hit in the face, thrown to the ground, and burned.

Although, during the plea colloquy, Polchow only specifically admitted to his involvement in the assault that resulted in B.J.B. suffering a broken jaw, the amended complaint is replete with other instances where Polchow assaulted B.J.B himself and aided and abetted other assaults of B.J.B. Additionally, the amended complaint states that B.J.B. was expected to remain in the Minneapolis hospital for at least two weeks, providing further evidence about the serious nature of his injuries. *See State v. Jones*, 266 N.W.2d 706, 710 (Minn. 1978) (concluding that a victim's injuries constituted "other serious bodily harm" where she was found unconscious and on the verge of shock, did not regain consciousness until the next day, and remained hospitalized for a week). Given the numerous allegations in the complaint regarding Polchow's participation in multiple assaults upon B.J.B., B.J.B.'s lengthy hospitalization, and B.J.B.'s numerous injuries, including third-degree burns and a severely fractured jaw, a jury could reasonably infer that B.J.B.'s injuries constituted great bodily harm.

Polchow argues that his admissions at the plea hearing provide a factual basis for third-degree assault, not first-degree assault. *See* Minn. Stat. §§ 609.02, subd. 7a (stating that "substantial bodily harm" includes an injury that "causes a fracture of any bodily member"), .223 (providing that a person commits third-degree assault by assaulting another

8

and inflicting "substantial bodily harm") (2012). However, the factual basis of Polchow's first-degree assault plea is not inadequate merely because the factual basis would clearly support a third-degree assault plea, especially where Polchow admitted that B.J.B. did not receive medical treatment and agreed that B.J.B.'s broken jaw constituted great bodily harm, and where the record contains evidence regarding the severity of the jaw fracture, the other serious injuries that B.J.B. suffered, B.J.B.'s lengthy hospitalization, and Polchow's involvement in multiple assaults upon B.J.B.

On this record, a reasonable factfinder could conclude that Polchow aided and abetted an assault that resulted in great bodily harm. Therefore, we conclude that the factual basis of the plea was adequate and that plea withdrawal is not necessary to correct a manifest injustice.

In his pro se supplemental brief, Polchow argues that there is insufficient evidence to support his guilt and that he was not the person videotaping the assault. Polchow also argues that he was falsely accused, was falsely imprisoned, and is being wrongfully incarcerated. However, as these arguments are not supported by legal analysis or citation, we will not address them. *See State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008) ("[Appellate courts] will not consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority.").

**Affirmed.**